Commonwealth *v.* Pearson, Appellant.

468

Argued November 14, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

469

*William Goldstein,* for appellant.

*Deborah E. Glass,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 16, 1973:

On May 7, 1965, Oscar Pearson, the appellant, was convicted by a jury in Philadelphia on eleven separate indictments each charging aggravated robbery.[1] The indictments were numbered 764 to 774, inclusive, June Term, 1964. A prison sentence of five to ten years was imposed on each of eight indictments, the sentences to run consecutively. Sentence was suspended on three indictments, namely, those numbered 770, 773 and 774. The judgments were affirmed by the Superior Court, but this Court granted allocatur. Subsequently, on September 26, 1967, we reversed the judgments and

---

[1] Pearson was indicted as a fugitive on June 17, 1964, while confined in the United States Northeastern Penitentiary in Kelly Township (near Lewisburg), Pennsylvania. On July 28, 1964, he was turned over to the Philadelphia authorities for prosecution on the indictments.

ordered a new trial because of the use at trial of evidence secured by the police through means constitutionally impermissible. See 427 Pa. 45, 233 A. 2d 552 (1967).

On June 1, 1970, the new trial began, but in this instance Pearson was called upon to defend only six indictments or those numbered 764, 765, 767, 769, 772 and 774. He was acquitted by the jury of the charges embraced in indictment No. 767, but was found guilty on the other five indictments. A prison sentence of two to four years was then imposed on each of the five indictments upon which Pearson had been convicted at this trial (including indictment No. 774), the sentences to run consecutively. On appeal, the Superior Court unanimously affirmed the judgments, and we again granted allocatur.

Pearson initially contends the delay of more than thirty-two months between our mandate of September 27, 1967, ordering a new trial, and the commencement of the new trial on June 1, 1970, violated his constitutional right to a speedy trial. This issue was raised in the trial court via a petition for habeas corpus[2] and was decided adversely to Pearson after an evidentiary hearing. The court found that the delay was due to the fact that Pearson had difficulty in securing counsel to prepare and defend him at trial. In this connection, the record discloses the following facts.

As of September 26, 1967, Pearson was represented by Jerold G. Klevit, Esq., but Mr. Klevit withdrew from the case in April 1968, after assuming a position with the Solicitor's Office in Philadelphia. Subsequently (the exact date is not ascertainable from the files), Mary Bell Hammerman, Esq., was appointed by the

---

[2] The petition was filed on May 13, 1969, and was dismissed on June 12th "without prejudice" and without a hearing. However, an evidentiary hearing was held thereon on June 1, 1970, prior to trial.

court to represent Pearson, and on October 24, 1968, she obtained a directive from the court ordering the Commonwealth not to try Pearson in less than two months. In March 1969, Attorney Hammerman withdrew from the case with Pearson's concurrence. In May 1969, the office of the Public Defender of Philadelphia entered an appearance on Pearson's behalf and filed a petition for habeas corpus seeking his discharge alleging violation of the right to a speedy trial. When notified he was to be represented by the office of the Public Defender, Pearson declined this representation. His present counsel, William Goldstein, Esq., was appointed by the court early in June 1969, and entered his appearance on Pearson's behalf on June 10th.

The case was listed for trial on July 1st, August 7th, October 27th, December 2nd of 1969, and on January 19th, March 4th, and April 22nd of 1970. In each of these instances, the trial was continued, but the record fails to disclose who was the moving party or the reason for the postponements. However, at the habeas corpus hearing, Pearson testified, wtihout contradiction, that since Attorney Goldstein came into the case, no requests for postponement were made on his behalf.

From the foregoing, it is readily apparent that the district attorney's office of Philadelphia is not without blame for the delay in bringing Pearson to trial the second time, and we emphatically condemn such inefficient administration. No good reason appears in the record why the case was not listed for trial during the several months immediately following our mandate of September 27, 1967, during which Pearson was represented by Attorney Klevit. Likewise, no valid excuse appears in the record for the delay of one year in the trial following Attorney Goldstein's entry as defense counsel. Nevertheless, we are not persuaded Pearson was denied a speedy trial in the constitutional sense.

In determining if the constitutional right to a speedy trial has been violated, each case requires an analysis of the circumstances and a consideration of the rights of society, as well as those of the accused, to be protected from undue and oppressive pretrial incarceration. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972). See also *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A. 2d 127 (1972); and *Commonwealth v. Jones*, 450 Pa. 442, 299 A. 2d 288 (1973).

In the balancing of the foregoing rights, several relevant factors must be considered, and one of the more important such factors is the presence or lack of prejudice to the accused as a result of the delay. See *Barker v. Wingo*, supra. The instant record affirmatively discloses Pearson's ability to defend the charges was not impaired by the delay. It is also clear from the record that the Commonwealth did not deliberately delay the trial in order to hamper the defense and did not gain any advantage from the delay.

The armed robberies with which Pearson was charged occurred in Philadelphia on various dates between November 5, 1963, and March 30, 1964. Eyewitnesses unequivocally identified Pearson as one of the participants. At the 1965 trial, Pearson testified he suffered a loss of memory on July 5, 1962, and could remember little of what occurred from that date until "Mothers Day" in 1964. He stated he had a faint recollection of being in Philadelphia on December 21, 1962, and listening to a conversation between two men then known to him as Toney Martha[3] and Frank Cuningham, wherein they discussed robbing a bank and a telephone company in Philadelphia (the charges against Pearson involved robberies of such business places),

---

[3] A Gilbert Martell (whom Pearson identified as the man known to him as Toney Martha) plead guilty to commission of the robberies involved and testified at the 1965 and 1970 trials of Pearson that Pearson participated.

but said due to his loss of memory he could not say whether or not he committed or participated in these or any other robberies. No corroborating testimony was offered.

Pearson also testified in the 1970 trial, and on this occasion his testimony was identical with that given in 1965. Again, there were no corroborating witnesses. Hence, the delay did not impair Pearson's ability to defend.

After considering and weighing all of the relevant factors, we are not persuaded Pearson's constitutional right to a speedy trial was violated.

It is contended the trial court erred in denying a pretrial hearing to determine if Pearson's identification by certain witnesses to be called at trial was tainted or influenced by suggestive photographs shown to them during the prearrest police investigation. The request for this hearing was made orally on the day of trial, and no reason was given or appears why this motion could not have been made at least ten days before trial, as required by Rule 323 of the Pennsylvania Rules of Criminal Procedure. Under the circumstances, the court did not err in refusing the requested hearing.

It is urged the trial court erred in defining reasonable doubt for the jury. The portion of the charge complained of was as follows:

"Fancy, if you can, a set of scales. That set of scales is even. It was even at all times. It stands even until you determine that it tips one way or the other or that the scales remain even. What am I saying? I am saying this: on one side suppose the questions as to the evidence, guilty, and on the other side, not guilty. The evidence on the side of the scales which says guilty must be of such weight that that weight satisfies you beyond a reasonable doubt and causes those scales to

tip to the point where you say to yourselves the evidence of guilt satisfies the jury, the individual members of the jury, to the point where they come to the conclusion of the guilt because the evidence satisfies them on that point beyond a reasonable doubt. . . .

"A reasonable doubt, I started to say to you, is such a doubt which would arise in your affairs of importance which would cause you to halt, hesitate and refuse to take action. Those are the words in the law."

In *Commonwealtth v. Burns*, 409 Pa. 619, 187 A. 2d 552 (1963), we recommended that a standard and approved instruction on reasonable doubt would be: " 'A reasonable doubt cannot be a doubt fancied or conjured up in the minds of the jury to escape an unpleasant verdict; it must be an honest doubt arising out of the evidence itself, the kind of doubt that would restrain a reasonable man (or woman) where acting in a matter of importance to himself (or herself).' " Id. at 635, 187 A. 2d at 561.

It is argued the instruction instantly, that reasonable doubt is such a doubt, which would cause the jurors to "refuse" (instead of to "restrain" as recommended in *Burns*, supra) to take action, indicated the necessity for the existence of a stronger doubt in the minds of the jurors than the law requires. We discern no such implication. Webster's Third International Dictionary says to "restrain" oneself from taking action is to "restrict, limit or prevent oneself from doing it", and to "refuse" to take action is "to decline to take action". It is, therefore, just a matter of semantics and, after reading the relevant portion of the charge in its entirety, we find no error.

Appellant's reliance on *Commonwealth v. Milliner*, 219 Pa. Superior Ct. 359, 281 A. 2d 763 (1971), is misplaced. It is true that in *Milliner* the court also instructed the jury to weigh the evidence on a set of

scales[4] as it did instantly. However, herein the court did not erroneously instruct the jury as it did in *Milliner* that if the scale tipped in favor of the side of guilt then the Commonwealth had met its burden of establishing the defendant's guilt beyond a reasonable doubt.

The next alleged error is that due to deletions in the notes of testimony of the first trial, Pearson was deprived of his right to adequate cross-examination of certain witnesses at the second trial. The simple answer to this is that the record fails to substantiate any such deletions occurred.

Finally, it is asserted the sentence imposed on indictment No. 774 after the second trial was constitutionally impermissible. With this we agree. As ruled in *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072 (1969), where a defendant is convicted a second time following a successful appeal, the sentence imposed the second time may not exceed the original sentence unless for good cause shown. "Good cause" is limited to events occurring subsequent to the first trial. Such good cause is absent here.

The Commonwealth's position is that since the aggregate sentence imposed following the second trial was less than the aggregate sentence imposed after the first trial, *Pearce* was not violated. We reject this position. The sentence imposed on each indictment is controlling. Cf. *Commonwealth v. Allen*, 443 Pa. 96, 277 A. 2d 803 (1971).

The judgment of sentence imposed on indictment No. 774 is reversed.

The remaining judgments of sentence are affirmed.

_____

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The administration of criminal justice is constitutionally effective only if it satisfies both the needs of

_____

[4] We urge the Trial Courts to avoid this type of instruction in criminal cases.

maintaining public order and preserving individual freedoms. Both the societal interest and that of the individual defendant are encompassed in the constitutional concept of a speedy trial. Both interests demand a prompt disposition of charges pending against an accused.

A prompt trial of criminal offenses must not be delayed by either the prosecution or the defense. Nor may courts contribute to such delays. Society's interest in the prompt presentation of criminal cases and the defendant's right to speedy trial recognize delay *only* for good cause. See, e.g., American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, §2.3 (Approved Draft, 1968). The accused may not have relief because of delay for which he is responsible. Nor may the prosecutor be permitted to defeat the constitutional guarantee of a prompt trial by pursuing a course of dilatory conduct which he creates.

The constitutional mandate of a speedy trial compels enforcement of that safeguard by effective sanctions. Here, where the time for trial commenced from the date of our mandate granting a new trial* (September 26, 1967), and trial was not begun until June 1, 1970, that sanction means the discharge of the defendant. See American Bar Association Standards, supra, §2.2. No "good cause" has been advanced by the Commonwealth to sustain its failure to promptly retry appellant. As the majority correctly notes, an unexcused seven-month delay existed prior to the withdrawal of appellant's first counsel, and a year delay subsequent to the appointment of his final counsel. The cause of these delays has in no way been attributed to appellant.

---

* Or, at most, the time of trial began to run from the date that mandate was received by the trial court.

On this record, the unnecessary delay in retrying appellant constitutes a form of injustice clearly violative of defendant's constitutional right to a speedy trial. *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182 (1972) ; *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A. 2d 127 (1972).

I dissent and would discharge the defendant.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissenting opinion.