408 A.2d 475

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Dale KUNKEL and Alfred F. Crawford.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1976.

Filed Aug. 1, 1979.

will serve to alleviate this problem as well. See *Commonwealth v. McCuster,* —— Pa. ——, —— A.2d —— (1977).

Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellant.

James Kerry O'Malley and with him Robert W. Selko, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This appeal arises from an order granting appellees' motions to suppress the Commonwealth's evidence.

In September 1975, Sergeant Freedman and Officer Martin of the Ross Township Police Department in Allegheny County received information that a lottery was being conducted at a certain residence in Shaler Township.[1]  After an investigation, the officers appeared before a magistrate whose jurisdiction included Shaler Township, and applied for a search warrant.  The magistrate issued the warrant, and the officers informed the Shaler Township Police Department of the pending search.  Allegedly, officers from the Shaler Township Police Department accompanied Freedman

---

1.  Shaler Township adjoins Ross Township.

and Martin when the warrant was served and executed.[2] Evidence of gambling operations was discovered, and appellees were arrested and charged with gambling, poolselling, bookmaking and related offenses.

Appellees filed a motion to suppress the evidence, alleging, among other things, that the warrant was defective for having been issued to police officers who were acting beyond their jurisdiction. The lower court agreed, and suppressed the evidence. The Commonwealth appealed. However, in *Commonwealth v. Kunkel*, 254 Pa.Super. 5, 385 A.2d 496 (1978), a majority of this court believed that neither the record nor the Commonwealth's brief sufficiently established our jurisdiction to hear the appeal. Accordingly, disposition of the appeal was deferred to permit the Commonwealth to file a supplemental brief to establish our jurisdiction.

A brief has now been filed, which alleges the following: [N]ot only was the gambling paraphernalia, such as notepads, telephones, and telephone bills, which appears on the inventory receipt form attached to the search warrant . . . suppressed but also while the officers were in the premises executing the search warrant, one of the officers plugged in the telephones and received sports' bets. This evidence is likewise dependent on the validity of the warrant and search. The Commonwealth thus avers that the Order appealed from in effect terminated the prosecution since no other admissible evidence remains.

Commonwealth's Brief at 7.

This statement satisfies the requirement that before an appeal may be taken by the Commonwealth from an order suppressing evidence, the Commonwealth must state in its brief that the order will terminate or substantially handicap the prosecution of the case, and explain why this is so. *Commonwealth v. Kunkel, supra,* 254 Pa.Super. at 11, 385

---

2. The lower court found that Shaler Township police did in fact accompany Freedman and Martin. However, the suppression hearing record is silent on this point, except for an assertion by the district attorney during argument. N.T. at 7, 28.

A.2d at 499. *See also Commonwealth v. Barnett,* 471 Pa. 34, 369 A.2d 1180 (1977); *Commonwealth v. Ray,* 448 Pa. 307, 292 A.2d 410 (1972); *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963). Therefore, we shall consider the merits of the appeal.

The lower court's holding was based on two propositions: 1) that Officers Freedman and Martin lacked authority to act in their official capacities in Shaler Township; and 2) that since Pa.R.Crim.P. 2001, 19 P.S. Appendix, states that a search warrant may be issued only by an issuing magistrate having jurisdiction of the person or place to be searched, the warrant may be issued only to a law enforcement officer having jurisdiction to execute the warrant under Pa.R. Crim.P. 2004, 19 P.S. Appendix.

We agree with the lower court's conclusion that Officers Freedman and Martin had no power to act as police officers in Shaler Township. *See Boorse v. Springfield Township,* 377 Pa. 109, 112 n. 2, 103 A.2d 708, 710 n. 2 (1954), *overruled on other grounds, Ayala v. Philadelphia Bd. of Public Educ.,* 453 Pa. 584, 305 A.2d 877 (1973) (township police officer's jurisdictional authority limited to the geographical bounds of his township); *cf. Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1976); 19 P.S. § 11 (1964 and Supp.1978–79) (power of township police officers to make arrests outside jurisdiction no broader than statutory grant).[3] We also agree with the lower court's conclusion that since Freedman and Martin had no official powers outside Ross Township, under Pa.R.Crim.P. 2004 they could not serve the warrant.[4]

---

**3.** It may be noted that the Commonwealth did not attempt to show that Freedman and Martin could act in their official capacities in Shaler Township pursuant to a contract between Shaler Township and Ross Township for mutual police aid. *See* 53 P.S. §§ 56554, 65590 (1957).

**4.** We are not faced on this appeal with the issue of whether Freedman and Martin could legally participate in the service and execution of the search warrant by Shaler Township police officers, and if so, the extent to which they could legally participate. The lower court terminated the taking of testimony once it learned that Freedman and Martin were Ross Township police officers who had been issued

Although Rule 2004 states, somewhat ambiguously, that "[a] search warrant shall be served by a law enforcement officer," [5] the rule assumes, we believe, that the officer serving the warrant has authority to act as an officer at the place where the warrant is served, not at some other place. We do not agree with the lower court, however, that it follows from these propositions that the search warrant could not be issued to Freedman and Martin for service by the Shaler Township police. No statute or rule of criminal procedure requires that a search warrant be issued only to a person empowered to execute it. Indeed, the Rules of Criminal Procedure indicate that the contrary is true. Under Pa.R. Crim.P. 2006, any individual may be the affiant for a search warrant. Thus, Freedman and Martin, as Ross Township officers, could be affiants for a warrant in Shaler Township. The Official Comment to Pa.R.Crim.P. 2004 states that the officer who will execute the warrant need not be specifically designated in the warrant, but that any law enforcement officer may execute it. Thus, there is no requirement that the person to whom the warrant is issued also be the person who executes it.

Our difficulty with the lower court's holding may be illustrated by the following example: If a Shaler Township police officer had accompanied Officers Freedman and Martin when they appeared before the issuing magistrate, and if, after Freedman and Martin had completed their affidavit, the magistrate had issued the warrant to the Shaler Township police officer, and he had then delivered it to Freedman

a search warrant for a residence in Shaler Township. Thus, the record does not show how the warrant was executed; more specifically, it does not show whether Freedman and Martin merely accompanied the Shaler Township police to the searched premises; whether they were the ones who actually served and executed the warrant while the Shaler Township police merely observed; or whether their participation fell between these extremes.

5. Unfortunately, the term "law enforcement officer" is not defined in the Rules of Criminal Procedure. *But see* 53 P.S. § 892 (Supp.1978–79) (defining "law enforcement officer" in connection with eligibility for death benefits); 18 C.P.S.A. § 501 (1973) (defining "peace officer").

and Martin with instructions to take it to another Shaler Township police officer for execution, according to the lower court's holding no impropriety would have occurred. If this is so, we fail to see the impropriety of having the warrant issue directly to Freedman and Martin for delivery to the Shaler Township police.

The citizens of this Commonwealth have the right under the federal and state constitutions to be free of unreasonable searches and seizures. Enjoyment of this right has, in many instances, been abridged because a magistrate has issued a warrant on less than probable cause, or law enforcement officers have executed a properly issued warrant in an unreasonable manner. To curb the possibility of such abuses, our Rules of Criminal Procedure have set forth strict procedural requirements. However, it is difficult to suppose a case (although there may be one) in which a person's constitutional rights to be free of an unreasonable search and seizure might be abridged by ministerial steps occurring between the issuance of the warrant and its execution. In any event, the Rules of Criminal Procedure do not prescribe procedures for the delivery of the warrant from the issuing magistrate to the executing officer, nor do we believe that a prescription is necessary. Since appellees have not shown that their constitutional rights were infringed by the issuance of the warrant to Officers Freedman and Martin, the issuance was not a reason to suppress the Commonwealth's evidence. The order of the lower court will therefore be reversed.

As noted above,[6] however, the lower court did not take further testimony once it learned that in procuring the warrant, Officers Freedman and Martin had acted outside their jurisdiction. The record was therefore insufficient to enable the court to consider—and the court did not consider—appellees' claims that the evidence should be suppressed because 1) the warrant was executed by Freedman and Martin; 2) the scope of the search was excessive; 3) the warrant issued without probable cause; and 4) their arrests

6. See footnote 4 supra.

were illegal. Accordingly, the case must be remanded for another suppression hearing on appellees' remaining claims.

Reversed and remanded.

CERCONE, P. J., concurs in the result.

PRICE, J., dissents.

JACOBS, J., did not participate in the consideration or decision in the case.