436 A.2d 1001

**COMMONWEALTH of Pennsylvania,**

v.

**Andrew FIUME, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed Oct. 30, 1981.

**56**

Richard F. Andracki, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before PRICE, SPAETH, HESTER, CAVANAUGH, BROSKY, WATKINS and HOFFMAN, JJ.

BROSKY, Judge:

Andrew Fiume was convicted at a non-jury trial of involuntary manslaughter and driving under the influence of intoxicating liquor. Appellant filed post-file motions which were denied. He was sentenced to three years probation. This appeal followed. We reverse and remand to the trial court for a new trial.

Appellant seeks resolution of three issues: first, whether the arrest was unauthorized because it occurred outside the officers' jurisdiction; second, whether the officers had probable cause to make the arrest; and, third, whether the verdict was supported by sufficient evidence. We will not discuss the latter two issues since our resolution of the first issue disposes with the case.

Fiume and two friends were drinking on the night of October 30, 1976 in Plum Borough, Allegheny County, Pennsylvania. The record indicates that they drank between three and four pitchers of beer that evening. After leaving the tavern where they had been drinking, they drove in appellant's automobile to parts unknown. After driving several miles, appellant's car veered to the left and skidded into a telephone pole. Fiume and one other passenger were thrown from the vehicle. The vehicle was broken in two by the force of the utility pole which cracked and fell into the automobile. The third passenger was pinned beneath the pole when it hit the car. He subsequently died.

The police responded to calls reporting the accident. Officer Ronald Meyers of the Plum Borough Police Department, Allegheny County, shortly after arriving at the scene of the accident, directed the three men be taken to Citizens General Hospital which is located in New Kensington, Westmoreland County. Meyers then radioed Officer Focareta who coincidentally was at the hospital to investigate another accident. He was also asked to investigate the accident in this case. Officer Focareta is also a member of the police department of Plum Borough.

Officer Focareta approached one of the victims in this case and asked him who had been driving the vehicle. That person indicated Fiume was driving. Appellant was then questioned, but he did not respond. The officer detected the scent of alcohol surrounding Fiume. He then placed appellant under arrest and read to him his *Miranda* rights.[1] A blood alcohol test was ordered which indicated a level of .22%.[2]

At a pre-trial hearing, Fiume sought to have the results of the blood alcohol test suppressed, arguing that it was the fruit of an illegal arrest caused by the fact that the arrest resulted from an investigation which occurred outside the jurisdiction in which the officers were statutorily authorized to make arrests. The suppression motion was denied. Appellant also argued at trial that the accident resulted from a

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964).

2. The Commonwealth does not contend that the Officer's arrest may have been a citizen's arrest. However, as we said in *Commonwealth v. Ward*, 235 Pa.Super. 550, 556 n. 5, 344 A.2d 650, 653 n. 5 (1975):
   [5] The Commonwealth does not press the point that we should treat the officer's arrest as a citizen's arrest. First, it is questionable whether the arrest would have been valid as a citizen's arrest. See 3 P.L.E. § 5 Arrest, p. 38–39, and cases cited therein. Second, we rejected the same argument in *Commonwealth v. Troutman*, supra, 223 Pa.Super. at 512, 302 A.2d at 432: "Once an officer invokes the power of the township to make an arrest, he cannot preserve the legality of the arrest by labelling his behavior a citizen's arrest."
   *Commonwealth v. Edwards*, 269 Pa.Super. 556, 410 A.2d 841 (1980).

latent steering defect present in his vehicle at the time of the accident.

The Act of August 6, 1963, P.L. 511, No. 267, § 1, as amended, Act of November 2, 1973, No. 109, § 1, (19 P.S. § 11) states:

Any police officer in the employ of a city, borough, town or township may arrest, with or without a warrant, any felon or person who has committed a misdemeanor or summary offense beyond the territorial limits of the political subdivision employing such officer for such offense committed by the offender within the political subdivision employing the police officer *if such officer continues in pursuit of the offender after commission of the offense* : Provided, however, that a police officer shall exercise only the power of arrest he would have if he were acting within the territorial limits of the political subdivision employing him.

(Emphasis added.)[3] Had the police sought to arrest appellant at the scene of the accident, they would have made a warrantless arrest.

The Act of April 29, 1959, P.L. 58, § 1204(a), 75 P.S. § 1204(a), amended by the Act of July 20, 1974, P.L. 522, No. 177 § 2, [75 P.S. § 1204(a)] provides:

Police officers, when in uniform and displaying a badge or other sign of authority, may arrest, upon view, any person violating any of the provisions of this act, where the offense is designated a felony or misdemeanor, or in cases causing or contributing to an accident resulting in injury or death to any person, and in all cases of arrest such peace officers shall forthwith make and file with the magistrate, before whom the arrested person is taken a complaint setting forth in detail the offense, and at once furnish a copy thereof to the person arrested. A peace officer may, upon review or upon probable cause without a warrant, arrest any person violating section 103.7 of this act in cases causing or contributing to an accident.

**3.** Repealed. April 28, 1978, P.L. 202, No. 53, § 2(a)[14], effective June 27, 1978. Clearly, the instant case falls in the period of time during which the statute was effective.

The offense of driving under the influence of liquor or drugs in effect at the time of the accident was:

Section 1037. Driving Under the Influence of Liquor or Drugs.—It shall be unlawful for any person to operate a motor vehicle, tractor, streetcar or trackless trolley omnibus, while under the influence of intoxicating liquor *or any narcotic drug or habit producing drug, or permit any person...*

Act of April 29, 1959, P.L. 58, § 1037 (75 P.S. § 1037).

■ Thus, warrantless arrests are permitted if police have probable cause to believe a person is driving while intoxicated. *Commonwealth v. Meyer*, 488 Pa. 414, 412 A.2d 577 (1980); *Commonwealth v. Levesque*, 469 Pa. 118, 364 A.2d 932 (1976); *Commonwealth v. Trefry*, 249 Pa.Super. 117, 375 A.2d 786 (1977).

The record discloses that, although the police had control over the appellant while in their jurisdiction, they at no time sought to arrest him. Thus, without regard to whether they could have arrested him pursuant to 75 P.S. § 1204(a), our inquiry must focus on the legitimacy of the extraterritorial arrest undertaken by Officer Focareta. Essentially, we must determine whether that officer was continuing "in pursuit of the offender after commission of the crime." 19 P.S. § 11.

■ The statute requires that an extraterritorial arrest be made by police only when it is undertaken as the result of a "continuous pursuit." This pursuit need not be "hot" however it must be "fresh." In *United States v. Getz*, 381 F.Supp. 43 (E.D.Pa.1974), affirm 3 Cir., 510 F.2d 971, cert. den. 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105 (1976), a case involving an extraterritorial arrest of bank robbers who had been continuously pursued by the police for 35 minutes, District Judge Troutman said in an opinion for the court:

Defendants argue that the arrest was invalid because the officers were not in "hot" pursuit. Apparently, defendants contemplate that only a fender-smashing Hollywood style chase scene would satisfy the requirement of

the statute. We do not read the act so restrictively. The statute on its face provides only that arrest may be effected beyond the jurisdiction so long as "such officer continues in *pursuit* of the offender..." It does not specify that the officer must be in "hot" pursuit. The phrase "continues in pursuit" supports the conclusion that the statute contemplates "fresh pursuit." In the instant case, Officers Young and Scalzo were in continuous pursuit of the evasive robbers from the time of the initial communication at 2:20 p. m. until the arrest at 2:55 p. m., a period of time encompassing 35 minutes. The officers proceeded diligently in their search for the fleeing robbers and there was no hiatus or interruption in their efforts. Accordingly, we conclude that the arrest was made beyond the territorial limits of the officers' jurisdiction, while the officers were in pursuit of the felons within the purview of 19 P.S. § 11.

(Emphasis supplied.) Id. at 46. Pennsylvania decisions have reached a similar understanding of the statute. *Commonwealth v. England*, 474 Pa. 1 n. 3, 375 A.2d 1297 n. 3 (1977); *Commonwealth v. Robb*, 238 Pa.Super. 62, 352 A.2d 515 (1975). Although Pennsylvania decisions have appeared to use the term "hot pursuit" and "pursuit" almost interchangeably, *Commonwealth v. England*, supra, 474 Pa. at 10, 375 A.2d at 1297; *Commonwealth v. Davis*, 466 Pa. 102, 351 A.2d 642 (1976), our courts have apparently adopted the same view as expressed in *United States v. Gertz*, supra. In *Commonwealth v. Anzalone*, 269 Pa.Super. 549, 410 A.2d 838 (1980), we specifically differentiated "hot pursuit" from "pursuit" stating that "pursuit" was all that was required. We hold that 19 P.S. § 11 requires only that the police be in "pursuit" of persons who have committed crimes in their jurisdiction to make a valid arrest. Id., 269 Pa.Super. at 554, 410 A.2d at 840. We also hold that the pursuit must begin both in the jurisdiction where the police are authorized to act and in that jurisdiction where the crime is committed. *Commonwealth v. Anzalone*, supra; *Commonwealth v. Bable*, 254 Pa.Super. 72, 385 A.2d 530 (1978).

Our Supreme Court first discussed the authority of police to make arrests outside of their jurisdiction in *Boorse v. Springfield Township*, 377 Pa. 109, 112 n. 2, 103 A.2d 708, 710 n. 2 (1954), overruled on unrelated grounds, *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), that police officers were limited in geographical authority to the geographical boundaries of their township. The General Assembly enacted 19 P.S. § 11 as a codification of this principle subject to the exception that police involved in the continuous pursuit of a felon could pursue that person outside their jurisdiction. The authority of police, however, to arrest outside their jurisdiction is specifically limited to the statutory grant. 19 P.S. § 11. *Commonwealth v. Kunkel*, 268 Pa.Super. 299, 408 A.2d 475 (1979).

In *Commonwealth v. Troutman*, 223 Pa.Super. 509, 302 A.2d 430 (1973), we noted that:

> The legislature has not extended the authority to township police officers to cross township lines in order to make an arrest in hot pursuit of a misdemeanant.... Until the legislature grants such power to township police officers, this court cannot permit local law enforcement officials to infringe upon the jurisdiction of other local law enforcement agencies by crossing township lines to arrest.

Id., 223 Pa.Super. at 511, 302 A.2d at 431; *Commonwealth v. Ward*, supra. Subsequent to our decision in *Commonwealth v. Troutman*, supra, the legislature expanded the power of local police to pursue a fleeing misdemeanant into another jurisdiction. Act of August 6, 1963, P.L. 511, No. 267, § 1; as amended by the Act of November 2, 1973, No. 109, § 1; imd. effective; 19 P.S. § 11.

In *Commonwealth v. Robb*, supra, we said that the purpose of the 1973 amendment to 19 P.S. § 11 was to permit officers to pursue intoxicated motor vehicle operators across jurisdictional lines and arrest them. We held that although the crime for which the defendant is eventually charged must occur in the policeman's jurisdiction, the probable cause for arrest need not arise until after the police officer has pursued the felon or misdemeanant into the neighboring

jurisdiction. The Commonwealth argues that this analysis fits their situation perfectly. We cannot agree. While we said in *Commonwealth v. Robb,* supra, that because 19 P.S. § 11 is not penal in nature that its construction and application must be liberally construed, 1 Pa.C.S.A. § 1928; *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974), we do not believe that the lower court's interpretation is in accord with even the most liberal of interpretations. To affirm the trial court's interpretation of 19 P.S. § 11 would contradict the intentions of the General Assembly, 1 Pa.C.S.A. § 1921.

In *Commonwealth v. Robb,* supra, where police followed by car and eventually arrested, in Bucks County, James H. Robb for an offense arising in Montgomery County, we said:

Appellee also contends that 19 P.S. § 11 did not authorize this arrest because Officer Simes did not "pursue" appellee into Bucks County. Appellee argues that, in this case, Officer Simes directed appellee to cross the border and appellee obeyed. There was not real pursuit because appellee was not fleeing. We agree that generally, the word "pursuit" connotes something more than mere casual following. However, because 19 P.S. § 11 is not penal in nature it must be interpreted liberally. . . . A liberal interpretation of the word "pursuit" would include the conduct of the officer in this case.

Id., 238 Pa.Super. at 68–69, 352 A.2d at 517.

We do not hold, as the Commonwealth would have us hold, that the very liberal interpretation of the statute adopted by the trial court is correct. It appears to us that the trial court has permitted greater authority to the police than the statute permits. The trial court stated in the relevant portion of its opinion:

Officer Meyers, the first officer to arrive on the scene, took control of the situation. Under his authority and at his direction the accident scene was secured; a tow truck was called and operated according to his instructions; and the three accident victims were taken to the hospital. Thus, Meyers had already exercised control over the in-

jured defendant in Plum. Under these circumstances he would have had the authority to direct the blood seizure, ideally at the first safe moment. This authority was then transferred to Focareta at the hospital.

More importantly, it would be contrary to public policy to hold, under the facts of this case, that the evidence must be suppressed on the basis that the arresting officer was outside his territorial jurisdiction. Police officers should never find themselves in a situation in which they must choose between obtaining possibly crucial evidence of a highly evanescent nature and safeguarding the health or life of a suspect by transporting him or her to the closest hospital. In such situations the police would be encouraged to ignore the latter course of action in favor of the former. And when the police act out of humanitarian instincts the suspect should not receive a windfall.

Moreover, there are not competing Fourth Amendment policy considerations here: the defendant has suffered no violation of his constitutional rights by being arrested in New Kensington by a Plum police officer.

The trial court was apparently swayed by the humanitarian purpose of the police in sending the injured men to the hospital. This action, however, cannot be construed to permit the police of Plum Borough to make an arrest outside their jurisdiction. If we were to expand upon the meaning of 19 P.S. § 11 as the trial court would like us to do, we would be taking an action which is better left to the legislature and not the courts.[4] Even if the police had probable

---

4. The General Assembly by the Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978 (42 Pa.C.S.A. § 8901) substantially reenacted 19 P.S. § 11. It states:

Any police officer of any political subdivision may arrest with or without warrant any person beyond the territorial limits of such political subdivision for a summary or other offense committed by such person within such political subdivision if the officer continues in pursuit of such person after commission of the offense. The police officer shall exercise under this section only the power of arrest which he would have if he were acting within the territorial limits of his political subdivision.

We note with particular interest that in a very recent opinion we interpreted 42 Pa.C.S.A. § 8901 as requiring fresh and continuous

cause to arrest in Plum Borough, which we did not require in *Commonwealth v. Robb*, supra, there clearly was no pursuit. The record does not disclose even a suspicion on the part of Officer Meyers that the accident was in some way related to a possible violation.

The record indicates that Officer Meyers testified:

Q. Do you know where the three individuals were taken? Where were they taken?

A. Citizens General Hospital, New Kensington.

Q. Did you have an opportunity that night to talk to your dispatcher?

A. Yes.

Q. What information did you put over the radio?

A. The approximate time that the first ambulance was getting ready to leave the scene of the accident. I got in the patrol car and I called the police station and I was aware that Officer Focareta was—called the police station and told him to call Citizens Hospital and request Officer Focareta to remain at the hospital and collect information from the victims that I was sending down to him by way of ambulance.

Q. What did you do subsequent to putting that radio call in? Subsequent to that call what did you do? Did you remain at the scene?

A. I remained at the scene until the scene was completely cleaned up and secured.

Officer Meyers also testified that there was a reasonable likelihood that many accidents occurred on the highway. Furthermore, at the turn in the road, where the accident occurred, the utility pole was not visible until a driver was quite near it. There is also no dispute as to the fact that the appellant was driving within the speed limit.

pursuit rather than hot pursuit. *Commonwealth v. Holderman*, 284 Pa.Super. 160, 425 A.2d 752 (1981). We also find that the General Assembly has not expanded its reasoning to include a rationale upon which the lower court's analysis could be theoretically justified, even if 42 Pa.C.S.A. § 8901 were applicable in the instant case. Clearly, fresh and continuous pursuit remains a requirement of the statutory provision.

Q. Now, you have identified Picture No. 1 as being approximately a quarter mile from the accident scene. Correct?

A. Correct.

Q. From that point you are unable to observe the pole in question. Correct?

A. Correct, because of the trees.

Q. Because of the trees and the fact that there is a curve in the road?

A. Correct.

Thus, while the Commonwealth need not prove that probable cause existed to arrest in Plum Borough, in order to make an extraterritorial arrest valid, the record does indicate that Officer Meyers was apparently not even suspicious of the accident circumstances and certainly saw no reason to pursue the appellant. Compare, *Commonwealth v. Guerry*, 469 Pa. 20, 364 A.2d 700 (1976). Clearly, Meyers notified Officer Focareta so that he could investigate the accident in accordance with normal police procedures. There was no pursuit.

Furthermore, while we want to make it clear that a policeman may delegate responsibility or seek assistance from a fellow officer, in his own jurisdiction, or one outside his jurisdiction, when the policeman is in pursuit of a felon or misdemeanant, from his own jurisdiction to a foreign jurisdiction, no such pursuit existed here. Any suspicion that any type of violation had occurred did not arise until Officer Focareta visited the accident victims. Quite obviously, Officer Meyers was not in pursuit. Any actions by Officer Focareta began outside his jurisdiction and, therefore, were beyond any conceivable reasoning involving pursuit.

We also note the Commonwealth made no attempt to show that Officer Focareta could act or acted under his official capacity while in New Kensington, Westmoreland County, under any agreement between Plum Borough, Allegheny County, and New Kensington, Westmoreland County, for mutual police aid. See 53 P.S. §§ 56554, 65590; *Com-*

*monwealth v. Kunkel,* supra, 268 Pa.Super., at 302 n. 3, 408 A.2d at 476 n. 3. Clearly, there is no plausible argument which would legitimize Officer Focareta's actions as that of a deputy of the New Kensington, Westmoreland County, Police Department.

■ We hold that these circumstances do not fall within the purposes envisioned by the General Assembly when it enacted 19 P.S. § 11. The provisions were intended to facilitate police pursuit and arrest of persons who violate laws and then attempt to secret the jurisdiction in which they committed the offense. Certainly, the General Assembly proposed to permit police to "pursue" individuals who were also driving while intoxicated over jurisdictional boundaries so that the safety of those people and others might be preserved.

Similarly, the General Assembly sought to permit police the opportunity to obtain evanescent evidence by permitting a continued pursuit. However, the General Assembly did not intend to endorse police investigations involving several members of a police force that did not flow from "continuous pursuit" of offenders. Pennsylvania decisions have restricted police from engaging in unauthorized extrajurisdictional arrests for many years. *Boorse v. Springfield Township,* supra. Subsequently, the General Assembly provided limited circumstances under which extrajurisdictional arrests may be undertaken by police. 19 P.S. § 11. However, in light of the restricted extrajurisdictional authority accorded police by our courts and by the General Assembly, we must assure that the police do not seek to legitimize their authority in other jurisdictions than their own beyond the scope of the purposes the General Assembly undertook when it passed 19 P.S. § 11.

Finally, the appellant argues he should be discharged if we find the arrest to have been illegal. We cannot agree.

In *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), the United States Supreme Court articulated that a United States citizen who had been forcibly removed from a

foreign country for trial in a state court could not challenge the indictment, or his conviction thereunder, on the grounds that he was improperly brought within the court's jurisdiction in violation of his Fourteenth Amendment right to due process of law. This decision was reaffirmed many years later in *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541, reh. den. 343 U.S. 937, 72 S.Ct. 768, 96 L.Ed. 1344 (1952).

An exception to this rule was carved out in *United States v. Toscanino*, 500 F.2d 267, reh. den. 504 F.2d 1380 (2nd Cir. 1974), wherein that court said:

> In light of these developments we are satisfied that the *"Ker-Frisbie"* rule cannot be reconciled with the Supreme Court's expansion of the concept of due process, which now protects the accused against pretrial illegality by denying to the government the fruits of its exploitation of any deliberate and unnecessary lawlessness on its part. Although the issue in most of the cases forming part of this evolutionary process was whether evidence should have been excluded (e. g., *Mapp, Miranda, Wong Sun, Silverman*), it was unnecessary in those cases to invoke any other sanction to insure that an ultimate conviction would not rest on governmental illegality. Where suppression of evidence will not suffice, however, we must be guided by the underlying principle that the government should be denied the right to exploit its own illegal conduct, *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, [417], 9 L.Ed.2d 441 (1963), and when an accused is kidnapped and forcibly brought within the jurisdiction, the court's acquisition of power over his person represents the fruits of the government's exploitation of its own misconduct. Having unlawfully seized the defendant in violation of the Fourth Amendment, which guarantees "the right of the people to be secure in their persons . . . against unreasonable . . . seizures," the government should as a matter of fundamental fairness be obligated to return him to his *status quo ante*.

Id. at 275.

The *Toscanino* exception to the *Ker-Frisbie* rule has not been ruled upon by the Supreme Court except in *United*

*States v. Marzano*, 537 F.2d 257 (7th Cir. 1976), cert. den. 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977), where the Supreme Court denied certiorari in a decision of the Seventh Circuit Court of Appeals in which the court held that where no facts were alleged or proved which could be termed outrageous—shocking to the conscience—that the court would not inquire into the facts surrounding the appellant's apprehension and delivery into the court's jurisdiction. Thus, only where outrageous conduct is alleged and proved will the court inquire into the circumstances of the arrest to determine whether the person of the defendant should have been excluded from evidence and thereby discharging the defendant.

The Pennsylvania Supreme Court has only discussed this exception on one occasion. In *Commonwealth v. Pass*, 468 Pa. 36, 360 A.2d 167 (1976), the court said:

> Appellant argues that the federal indictments which brought him to Pennsylvania were a subterfuge and, therefore, his state convictions must fail because he was brought to Pennsylvania illegally. We do not agree. Appellant, with the advice of counsel, chose to voluntarily come to Pennsylvania. Moreover, the manner in which appellant was brought into Pennsylvania by federal authorities would not affect the jurisdiction of the Pennsylvania court in this case. Appellant was neither forcibly brought into Pennsylvania nor was he kidnapped by state or federal authorities for the purpose of bringing him to Pennsylvania. See *Lujan v. Gengler*, 2 Cir., 510 F.2d 62 (1975); Cf. *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974).

Id., 468 Pa. at 48, 360 A.2d 170.

■ In the instant case, Fiume has not alleged or proved that his presence before the Allegheny County Court of Common Pleas resulted from some outrageous police conduct. Thus, we will not even inquire into the possibility that the *Toscanino* exception is applicable. Accordingly, the appellant cannot be discharged.

■ The established standard by which the trial court must view the evidence in the instant case is clear. The interpretation of the due process clause was greatly expanded in the *Frisbie* decision. See Griswold, *The Due Process Revolution and Confrontation*, 119 U.Pa.L.Rev. 711 (1971). In so doing, the court has interpreted the due process clause so as to deter police misconduct. Thus, the Commonwealth is not permitted to realize the "fruits" of its own lawlessness in bringing an accused to trial. See *United States v. Russell*, 411 U.S. 423, 430–431, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Thus, all evidence which was obtained by the police which was the "fruit" of the illegal arrest must be excluded.

Accordingly, we reverse and remand the case for a new trial to determine at what precise moment in time Fiume was illegally placed under arrest and at said trial, the court shall exclude from admission into evidence any facts which came to the knowledge of the Commonwealth as a result of the illegal arrest.

Judgment of sentence reversed and remanded for a new trial.

HESTER, CAVANAUGH and HOFFMAN, JJ., concur in the result.

SPAETH, J., files a concurring and dissenting opinion.

WATKINS, J., files a dissenting opinion.

PRICE, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring and dissenting:

I concur in the majority's conclusion that appellant is entitled to a new trial, but not to discharge. I dissent because in ordering a new trial, the majority suggests that the lower court should hold a hearing in order to determine whether the blood was the fruit of the illegal arrest. *See* the last paragraph of the majority's opinion. The lower court should not hold such a hearing. The Commonwealth has—correctly—conceded that the blood was the fruit of the

arrest. *See* Brief *for* Commonwealth at 4, 11. Its argument has been that the arrest was not illegal.

I also wish to make one further comment.

On February 7, 1978, appellant was given a sentence of three years probation. He took an appeal from the judgment of sentence, and on January 4, 1980—almost two years later—a panel of this court issued an opinion vacating the judgment and ordering appellant discharged. On March 13, 1980, the Commonwealth's application for reargument was granted, and on November 14, 1980, the case was re-argued before the court *en banc.* I recite this procedural history to emphasize that when appellant was initially discharged by this court, he had already served nearly two years of his three year sentence of probation. This fact does not, as appellant contends it does, entitle him to discharge rather than a new trial. However, if after a new trial, appellant should again be convicted, the lower court will not be able to impose a more severe sentence than the initial sentence of three years probation, "[a]bsent valid and sufficient intervening conduct by the defendant articulated in the record." *Commonwealth v. Brenizer*, 477 Pa. 534, 538, 384 A.2d 1218, 1220 (1978). *See also Commonwealth v. Pearson*, 450 Pa. 467, 303 A.2d 481 (1973). Furthermore, it is constitutionally required that "punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 718–719, 89 S.Ct. 2072, 2077–2078, 23 L.Ed.2d 656 (footnote omitted).

WATKINS, Judge, dissenting:

I dissent, I would not hold that the officer's actions in seeing to it that the defendant got to a hospital in another jurisdiction before he arrested the defendant deprived the officer of his right to make the arrest.

In situations involving serious automobile accidents the investigating officer's first priority must be to see that those injured receive proper medical attention as soon as possible. Merely because an officer does this and sends an injured

motor vehicle operator to a hospital in another municipality rather than immediately arresting him does not divest the officer of his right to make the arrest. I would hold that 19 P.S. § 11 is sufficiently broad to cover this type of situation, as said Act is a procedural one and not one involving substantive criminal law. As such, it need not be so strictly construed. I would affirm the conviction.