438 A.2d 974

**COMMONWEALTH of Pennsylvania**

v.

**Thomas J. NOVICK, Appellant.**

Superior Court of Pennsylvania.

Argued March 5, 1980.

Filed Dec. 11, 1981.

Petition for Allowance of Appeal Granted May 7, 1982.

Larry A. Kalikow, Assistant Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

CERCONE, President Judge:

Appellant, Thomas J. Novick, takes this appeal from his conviction for three counts of burglary. In his brief, appellant argues that the physical evidence discovered in appellant's residence and appellant's oral and written inculpatory statements should have been suppressed as the fruits of an unlawful arrest made beyond the territorial limits of the arresting officers' political subdivision.[1] We find appellants argument to have merit; therefore, we reverse his convictions.

The underlying factual situation of the instant appeal is as follows. On the evening of April 14, 1978, at approximately

---

1. Appellant also argues that his arrest was made without probable cause. In view of our disposition of appellant's first issue, we do not reach the merits of appellant's "probable cause" issue.

eight o'clock, Officer Robert Manlove of the Camp Hill Police Department was driving in a marked police car, although he was not wearing his police uniform at the time. The officer had stopped at an intersection in the borough of Camp Hill when a passing motorist, named John W. Metzger, told Officer Manlove that he (the motorist) had just driven past the Ritzman Associates Building and had seen a man with light colored hair and wearing a brown jacket standing on the sidewalk between the Ritzman Building and an adjacent private home. The Ritzman Building, although only seven blocks away from Officer Manlove's location, was not located in the Borough of Camp Hill, which was Officer Manlove's municipality, but was instead located in the Township of Hampden.

Upon receiving this information, Officer Manlove immediately proceeded to the Ritzman Building. As he embarked upon the scene, the officer radioed the Hampden Township Police to advise them of a possible burglary in process at said building and asked them if they requested assistance. The Hampden Police replied in the affirmative, whereupon Officer Manlove proceeded to the scene, arriving there simultaneously with another Camp Hill police officer, Officer Donald Tappan. Upon their arrival, Officers Manlove and Tappan observed appellant walking across the parking lot, approximately twenty feet from the Ritzman Building. The officers drove their respective squad cars with red lights flashing into the lot and confronted appellant. Officer Tappan thought he recognized appellant as being a suspect connected with three suspicious fires which had occurred on the previous day, April 13, 1978, in the Camp Hill/Hampden area, two of which had occurred within a block of the Ritzman Building. On that basis the two Camp Hill officers arrested and handcuffed appellant and "read him his Constitutional Rights." Approximately three to five minutes after this arrest was made, officers of the Hampden Township Police Department arrived. Appellant was subsequently driven to the Hampden Township police station by Officer Tappan, one of the Camp Hill police officers.

At issue here is the question whether the Camp Hill police officers had the authority to legally arrest appellant in Hampden Township. Before addressing this question, it must first be noted that appellant's arrest under these circumstances cannot be supported by the law regarding "hot pursuit"; this point is conceded by the Commonwealth.[2] *See Commonwealth v. Bable*, 254 Pa.Superior Ct. 72, 385 A.2d 530 (1978) (where arrest of accused by officer of adjoining municipality was result of hot pursuit which originated outside the arresting officer's municipality, such arrest was unlawful because the officer had no authority to arrest anyone outside the officer's own municipality). Rather, the Commonwealth relies upon the statute which permits municipalities to enter into mutual aid agreements for the furnishing of police and fire protection. In pertinent part, this statute reads:

"*Joint contracts for police and fire protection.* To enter into contracts with the proper authorities of near or adjacent cities, boroughs, or townships, either for mutual aid or assistance in police and fire protection, or for the furnishing to, or receiving from, such cities, boroughs, or townships, aid and assistance in police and fire protection, and to make appropriations therefor... When any such contract has been entered into the police, firemen or fire police of the employing city, borough or township shall have all the powers and authority conferred by law on city, borough or township police, firemen, or fire police in

---

**2.** At the time of appellant's arrest, statutory law provided:

"Any police officer in the employ of a county, city, borough, town or township may arrest, with or without a warrant, any felon beyond the territorial limits of the political subdivision employing such officer for a felony committed by the felon within the political sub-division employing the police officer if such officer continues in pursuit of the felon after commission of the felony." The Act of August 6, 1963, P.L. 511, No. 267, § 1, 19 P.S. § 11 (1964).

In *Commonwealth v. Troutman*, 223 Pa.Superior Ct. 509, 302 A.2d 430 (1973), this Court held that the above Act did not give local police the right to make arrests outside of their own municipalities unless the arrest was made after hot pursuit of a suspected felon.

The above act was repealed effective June 27, 1978, but was substantially re-enacted, effective that same date by the Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 8901 (Supp.1980).

the territory of the city, borough or township which has contracted to secure such service."

The Act of February 1, 1966, P.L. (1965) 1743, No. 581, § 1202, 53 P.S. § 46202(35) (1966).

It has been held that only municipalities may enter into such agreements, and that tacit agreements between police departments of adjoining municipalities purporting to authorize such mutual aid are without legal effect to empower the police of one municipality to arrest someone in the other municipality. *Commonwealth v. Anzalone*, 269 Pa.Superior Ct. 549, 410 A.2d 838 (1979); *Commonwealth v. Bable*, 254 Pa.Superior Ct. 72, 385 A.2d 530 (1978). Therefore, the crux of this appeal is whether the municipalities of Camp Hill and Hampden entered into a mutual aid agreement. We find that the Commonwealth failed to prove the existence of such an agreement between Camp Hill and Hampden.

At the suppression hearing, the only evidence offered to prove the existence of a mutual aid agreement between the two municipalities involved was a copy of a document purported to be the mutual aid agreement. The specifics of this agreement are not important in this appeal; the fact which is most important is who in fact signed the agreement. At the end of this typewritten "agreement" follows a typewritten list of all the municipalities which are said to be part to the agreement, listing nine boroughs, including Camp Hill, and seven townships, including Hampden, the only signatories to this "agreement" are the mayor and secretary of Camp Hill. No representatives from any of the other municipalities, and most notably, Hampden, signed this "agreement." This evidence certainly falls short of proving that a *bona fide* agreement existed between the two municipalities involved. It must be emphasized that we are not necessarily ruling that a mutual aid agreement can only be proven by introducing a written agreement signed by the municipalities involved. However, the Commonwealth in this case neither introduced a duplicate copy of this "agreement" signed by representatives of Hampden Township nor did the Commonwealth call such representatives to the stand to

elicit oral testimony on this point. The evidence introduced by the Commonwealth, therefore, failed to prove anything more than the fact that Camp Hill demonstrated its willingness to provide mutual aid; the evidence does not prove that Hampden was a party to this agreement. Accordingly, the suppression court erred when it failed to rule appellant's arrest illegal and to suppress the fruits of that arrest, to wit, appellant's oral and written inculpatory statements. Therefore, appellant's conviction must be reversed and remanded for a new trial.[3]

Reversed and remanded for a new trial.

---

**3.** In *Commonwealth v. Fiume*, 292 Pa.Superior Ct. 54, 436 A.2d 1001 (1981), this Court ruled that absent some outrageous police conduct, the proper remedy in cases of illegal arrest is a remand for a new trial and not discharge.