699 A.2d 1250

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Kevin Scott STAIR, Appellant.**

Supreme Court of Pennsylvania.

Argued March 3, 1997.

Decided Aug. 27, 1997.

Reargument Denied Oct. 15, 1997.

598

Joseph M. Devecka, State College, for Kevin Scott Stair.

Thomas Ling, Bedford, for the Commonwealth.

## ORDER

PER CURIAM.

The Court being evenly divided, the order of the Superior Court is affirmed.

CAPPY, J., files an opinion in support of affirmance in which CASTILLE and NEWMAN, JJ., join.

ZAPPALA, J., files an opinion in support of reversal in which FLAHERTY, C.J., and NIGRO, J., join.

### *OPINION IN SUPPORT OF AFFIRMANCE*

CAPPY, Justice:

The question presented in this appeal is whether a Pennsylvania State Police Trooper can lawfully administer the Implied Consent Law, 75 Pa.C.S. § 1547(a),[1] in another state to a

---

1. Section 1547(a) of the Pennsylvania Implied Consent Law provides in pertinent part:

    § 1547(a). Chemical testing to determine amount of alcohol or controlled substance.

driver who has been involved in an automobile accident while operating a vehicle in Pennsylvania. For the reasons which follow, we would affirm the order of the Superior Court finding that a Pennsylvania State Police Trooper had authority, pursuant to Pennsylvania's Implied Consent Law, to advise the driver of his rights under the Pennsylvania Implied Consent Law and to request the driver to submit to chemical testing of his blood while in another state.

Appellant Kevin Scott Stair, who is a resident of Pennsylvania, was involved in a two-car accident on February 12, 1994 while operating a vehicle in Bedford County, Pennsylvania at a place less than a half mile from the Maryland state border. Appellant was transported from the scene of the accident to the nearest hospital for treatment of his injuries. This hospital was Memorial Hospital, located in Cumberland, Maryland. Appellant was admitted to Memorial Hospital at approximately 11:10 p.m. suffering from a concussion, and numerous broken bones, including his jaw, nose, ribs, and legs. When Pennsylvania State Police Trooper Bosch arrived at the scene of the accident at approximately 11:30 p.m., Appellant was no longer in Pennsylvania.

> (a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
> (1) while under the influence of alcohol or a controlled substance or both[.]
>
> . . .
>
> (b) Suspension for refusal.—
> (1) If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
> (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

█ Trooper Bosch conducted an investigation of the accident scene for approximately one hour. The trooper then proceeded directly to Memorial Hospital's emergency room, and, upon arriving at the hospital at 1:00 a.m., observed Appellant acting in a belligerent and uncooperative manner with hospital staff. When Trooper Bosch began to speak with Appellant, he noticed a strong odor of alcohol on Appellant's breath. A second Pennsylvania State Police Trooper who had accompanied Trooper Bosch to the hospital read *Miranda* rights [2] to Appellant. Trooper Bosch then gave *O'Connell* warnings [3] to Appellant and asked Appellant to submit to a blood alcohol content (BAC) test. Appellant consented to the test, and the results showed that his BAC was .258 percent.

Appellant was charged with driving under the influence of alcohol pursuant to 75 Pa.C.S. § 3731(a). Prior to trial, Appellant moved to suppress the BAC test results on the basis that his consent given to Trooper Bosch to withdraw his blood was involuntarily and unknowingly given.[4] The trial court denied his motion. In denying Appellant's motion to suppress, the trial court made no finding on whether Trooper Bosch placed Appellant under arrest in Maryland. The trial court found that Trooper Bosch had continued his investigation of

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** The phrase *"O'Connell* warning" means the duty imposed on the law enforcement officer to inform a motorist who has been asked to submit to chemical testing under the Pennsylvania Implied Consent Law, 75 Pa.C.S. § 1547, that the rights provided by the United States Supreme Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are inapplicable to a request for chemical testing under Pennsylvania's Implied Consent Law. *See Commonwealth, Department of Transportation v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). The *O'Connell* warning must specifically inform a motorist that his driving privileges will be suspended for one year if he refuses chemical testing, and that his *Miranda* rights do not apply to chemical testing. *See Commonwealth, Department of Transportation v. Ingram,* 538 Pa. 236, 648 A.2d 285 (1994). *See also, Commonwealth, Department of Transportation v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996).

**4.** Appellant's motion to suppress the blood test results asserted that Appellant was suffering from severe injuries when he was interviewed by Trooper Bosch in the X–Ray room of Memorial Hospital, and that he thus could not understand the Trooper's questions or give his consent to the blood test.

the driving under the influence matter which occurred in Pennsylvania at the hospital in Maryland where Appellant had been taken for emergency treatment and that Pennsylvania's Implied Consent Law applied to Appellant while he was present in the Maryland hospital's emergency room when Pennsylvania State Police were continuing their investigation of an accident occurring in Pennsylvania.

Appellant was tried without a jury and convicted of driving under the influence of alcohol, 75 Pa.C.S. § 3731(a)(1), (4) and (5)(ii). Appellant was sentenced to serve four to twenty-three and one-half months imprisonment, and to pay costs and fines.

Appellant then filed an appeal with the Superior Court challenging the suppression court's denial of suppression of his BAC results on the basis that these results were unlawfully obtained by Pennsylvania State Police in Maryland. Appellant raised only one issue: whether the trial court erred in denying suppression of the blood test results when the evidence of intoxication and the blood were obtained in Maryland by a Pennsylvania State Trooper acting without a search warrant or authorization by the Maryland police? The Superior Court rejected Appellant's argument that Pennsylvania's Implied Consent Law was inapplicable to Appellant while he was being treated for his injuries in Maryland, reasoning that as a licensed driver in this Commonwealth, Appellant is subject to the provisions of section 1547(a). The Superior Court agreed with the trial court that Trooper Bosch was authorized by Pennsylvania's Implied Consent Law to request that Appellant submit to chemical testing of his blood, and that, Appellant, after being appropriately advised by Trooper Bosch of the consequences of refusal to submit to chemical testing of his blood, had consented to such testing. The Superior Court thus affirmed Appellant's judgment of sentence.

We granted Appellant's petition for allowance of appeal in order to consider the issue of first impression as to whether a Pennsylvania State Police Trooper can lawfully administer Pennsylvania's Implied Consent Law in another state to a driver who has been involved in an automobile accident while operating a vehicle in Pennsylvania and request the driver's

blood for chemical testing. For the reasons expressed herein, we would affirm the order of the Superior Court.

■ Initially, we note that we will not reverse the suppression court's denial of Appellant's motion to suppress his BAC test results if the factual findings and legal conclusions drawn therefrom by the court are supported by the record. *Commonwealth v. Bracey*, 541 Pa. 322, 662 A.2d 1062 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996).

■ On appeal before this court, Appellant raises two arguments as to why the results of his BAC testing were obtained in violation of his rights under the Fourth Amendment of the United States Constitution and, accordingly, should have been suppressed by the suppression court.[5] Appellant argues that, once in Maryland, Trooper Bosch was without authority to advise Appellant of his rights as required by the Pennsylvania Implied Consent Law or to request Appellant to submit to chemical testing of his blood. We reject both of these arguments.

■ Both the authority for the Pennsylvania police officer to request BAC tests, and the requirement for the Pennsylvania police officer to advise a driver of his rights, are derived from the Pennsylvania Implied Consent Law. According to the Pennsylvania Implied Consent Law and our case law, all drivers in our Commonwealth are deemed to consent to BAC tests when a police officer has reasonable grounds to believe the driver was operating his vehicle while under the influence of alcohol. *See Commonwealth, Department of Transportation v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996); 75 Pa.C.S. § 1547(a).

■ Here, the record clearly shows that Trooper Bosch had reasonable grounds to believe Appellant was operating his vehicle while under the influence of alcohol, and that Appellant was subject to section 1547(a) since he was driving in Pennsylvania and the accident occurred in Pennsylvania. The fact

---

**5.** The Fourth Amendment of the United States Constitution provides a guarantee against unreasonable searches and seizures.

that Appellant was treated for his injuries in another jurisdiction immediately after an accident which occurred in Pennsylvania is irrelevant as to the issue of whether a Pennsylvania law enforcement officer retains section 1547(a) authority to secure BAC test results from a driver suspected of driving under the influence of alcohol in Pennsylvania. If reasonable grounds exist for the Pennsylvania police officer to believe that a driver was operating a vehicle while under the influence of alcohol in Pennsylvania, the requirements of section 1547(a) are met, and the officer may proceed to secure BAC test results,[6] provided, of course, that he also complies with the dictates of section 1547(b).[7] Both 75 Pa.C.S. § 1547(b) and *Scott, supra,* require that a driver be advised of his rights under the Pennsylvania Implied Consent Law, i.e., that his operating privilege will be suspended for a period of twelve months upon refusal to submit to chemical testing.

It is here that Appellant raises his second contention that, once in Maryland, Trooper Bosch was without authority to advise Appellant of his rights under the Pennsylvania Implied Consent Law. We reject this notion that the trooper was without authority to assist a driver in thoroughly understanding his or her rights under the Pennsylvania Implied Consent Law. This result is dictated not only because of our resolution of the foregoing issue, but also because it would be patently absurd to conclude that there is a lack of "authority" to assist a driver, especially in light of the fact that the specific facets of the law at issue here were designed in order to help a driver to fully understand his or her rights.

Additionally, we cannot accept Appellant's further contention that Trooper Bosch lacked authority to administer Pennsylvania's Implied Consent Law to him in Maryland because Trooper Bosch was not acting within the purview of

6. The test for reasonable grounds is whether a person in the position of the police officer, viewing the facts and circumstances as they appeared at that time, could have concluded that the motorist was operating the vehicle while under the influence of alcohol. *McCallum v. Commonwealth,* 140 Pa.Cmwlth. 317, 592 A.2d 820 (1991).

7. *See* note 1, *supra.*

section 8953 of the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S. § 8953, since he was not in hot pursuit of Appellant, nor had he received the prior consent of Maryland law enforcement authorities to his exercise of jurisdiction there.[8]

Section 8953 of the MPJA addresses the power and authority of a duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, to enforce the laws of this Commonwealth. As Trooper Bosch was not a municipal officer outside of his primary jurisdiction acting within this Commonwealth, section 8953 of the MPJA is irrelevant to the case *sub judice*. We therefore reject Appellant's argument that Trooper Bosch was required to comply with the prerequisites to an extraterritorial exercise of police jurisdiction set forth in section 8953 of the MPJA before apprising Appellant of our Implied Consent Law in Maryland.

■ Nor can we accept Appellant's final contention that the BAC sampling results should be suppressed on the basis of the test set forth in *Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421 (1985), because Trooper Bosch acted in bad faith by administering our Implied Consent Law in Maryland.

**8.** Act of June 15, 1982, P.L. 512, as amended, 42 Pa.C.S. § 8953. Section 8953 of the MPJA provides in pertinent part:

§ 8953. Statewide municipal police jurisdiction.

(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.

This court in *Mason* stated that suppression of evidence may be an appropriate remedy, where a violation of criminal procedural rules concerning searches and seizures also implicates fundamental, constitutional concerns, is conducted in bad faith or has substantially prejudiced the defendant.[9]

Appellant cites no rule of criminal procedure which would require Maryland law enforcement authorities to be notified prior to a Pennsylvania trooper's administration of Pennsylvania's Implied Consent Law to a driver in Appellant's position. He simply asserts that Maryland authorities should have had an opportunity to prevent the drawing of Appellant's blood, or, at least, to prevent it from being drawn without a search warrant and the presence of Maryland law enforcement authorities.

The suppression court found that the facts of record here establish that Trooper Bosch had reasonable grounds to believe that Appellant was operating the vehicle under the influence of alcohol. Trooper Bosch was not only authorized, but was under an affirmative duty, pursuant to section 1547(b) of Pennsylvania's Implied Consent Law, to apprise Appellant of the consequences of his refusal to submit to chemical testing of his blood. Trooper Bosch simply carried out his duty to inform Appellant of the consequences of his refusal to submit to chemical testing of his blood. Appellant, who was given both *Miranda* rights and *O'Connell* warnings, does not dispute that he voluntarily consented to the blood testing with the knowledge that it was part of a criminal investigation. Thus, no search warrant was necessary under our Implied Consent Law. *See Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992).

Under the operation of section 1547(b) of our Implied Consent Law, Appellant had no constitutional right to refuse

9. At issue in *Mason* was whether a search of the defendant's apartment, pursuant to a search warrant, by police officers from a county outside the one where the defendant's apartment was located was illegal pursuant to Pa.R.Crim.P. 2004, which addresses the service of search warrants. This court held in *Mason* that the search met the requirements of Rule 2004 where police officers from the county where the defendant's residence was located were present at the search.

chemical testing. As we explained in *Scott, supra,* driving in Pennsylvania is a civil privilege conferred on individuals who meet the necessary qualifications set forth in the Vehicle Code[10] at 75 Pa.C.S. § 1501 *et seq.* Under the terms of the Implied Consent Law, one of the necessary qualifications to continuing to hold that privilege is that a motorist must submit to chemical sobriety testing, when requested to do so by an authorized law enforcement officer in accordance with the prerequisites of the Implied Consent Law. The obligation to submit to testing is related specifically to the motorist's continued enjoyment of the privilege of maintaining his operator's license. 75 Pa.C.S. § 1547(b).

Thus, the absence of any participation of Maryland law enforcement authorities in Trooper Bosch's apprising Appellant of the consequences of his refusal to submit to chemical testing of his blood pursuant to Pennsylvania's Implied Consent Law is irrelevant to whether Appellant would have consented to his blood being drawn for the purpose of chemical testing as part of the criminal investigation against him.

We therefore conclude that Trooper Bosch's conduct was merely a fulfillment of an administrative act necessitated by the Pennsylvania Implied Consent Law. Furthermore, Trooper Bosch's enforcement and administration of the Pennsylvania Implied Consent Law in Maryland did not constitute an exercise of bad faith pursuant to the *Mason* test.

Accordingly, as the record supports the suppression court's findings of fact and conclusions of law, and, therefore, its denial of Appellant's motion to suppress the results of his BAC testing, we would hold that the Superior Court properly affirmed Appellant's judgment of sentence, and therefore would affirm the order of the Superior Court.[11]

CASTILLE and NEWMAN, JJ., join this opinion in support of affirmance.

10. Act of June 17, 1976, P.L. 162, as amended, 75 Pa.C.S. § 101 *et seq.*

11. The Opinion in Support of Reversal authored by Mr. Justice Zappala states that we have "failed to grasp the significance of the fact that Appellant was placed under arrest in Maryland by a Pennsylvania State

608

## OPINION IN SUPPORT OF REVERSAL

ZAPPALA, Justice.

In rejecting Appellant's contention that once in Maryland Trooper Bosch was without authority to advise Appellant of his rights under the implied consent law, the Opinion in Support of Affirmance has failed to grasp the significance of the fact that Appellant was placed under arrest in Maryland by a Pennsylvania State Trooper for the alleged commission of a misdemeanor in Pennsylvania.[1]  Under such circumstances,

Trooper for the alleged commission of a misdemeanor in Pennsylvania. Under such circumstances, a Pennsylvania State Trooper lacks authority to place a suspect under arrest in Maryland." (Opinion in Support of Reversal, slip op. at 1–2) Mr. Justice Zappala finds that it is clear from the record that Appellant was in fact placed under arrest by Trooper Bosch.  He bases this conclusion on a portion of Trooper Bosch's testimony upon direct examination by the Commonwealth at the suppression hearing, in which Trooper Bosch indicated that he read to Appellant Chemical Test Warnings, which included the statement,

"pleased be advised that you're now under arrest for driving under the influence of alcohol or a controlled substance pursuant to Section 3731 of the Vehicle Code. I'm requesting that you submit to a chemical test of blood.  It's my duty as a police officer to inform you that if you refuse to submit to the chemical testing that your operating privileges will be suspended for a period of one year."

(N.T.  Suppression Hearing, pp. 28–29).

The record also reflects that, prior to reading the Chemical Test Warnings to Appellant, Trooper Bosch was investigating the accident at the Memorial Hospital Emergency Room, questioning Appellant there about the accident.  When his questions were not providing any information, Trooper Bosch asked Appellant to submit to chemical testing of his blood, and read Appellant Implied Consent Warnings pursuant to section 1547, which were different from the Chemical Test Warnings which he then read to Appellant.

We do not fail to grasp the issue outlined in Mr. Justice Zappala's Opinion in Support of Reversal but, rather, decline to address an issue which was never placed into contention by Appellant in this case in seeking suppression of his consent to chemical testing of his blood on the basis that Pennsylvania State Troopers were without authority to advise him of his rights under Pennsylvania's Implied Consent Law and to request his blood for chemical sampling while in Maryland.

1.  It is clear from the record that Appellant was in fact placed under arrest by Trooper Bosch.  At the suppression hearing, Bosch testified that he read Appellant the implied consent law and advised Appellant that he was going to request that Appellant submit to a BAC test. Bosch responded to the Commonwealth's subsequent questioning as follows:

Q.  Did you read him anything else?

a Pennsylvania State Trooper lacks authority to place a suspect under arrest in Maryland.

Pennsylvania and Maryland are part of the federal system in which there are geographical limitations on the exercise of a state's power, a system in which no state can exercise direct jurisdiction and authority over persons and property outside its territory. *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878). Generally, in the absence of statutory or constitutional authority, a police officer acting within his official capacity cannot make an arrest outside the territorial limits of the jurisdiction from which his authority is derived. *See generally Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1976); *see also Commonwealth v. Fiume,* 292 Pa.Super. 54, 436 A.2d 1001 (1981); *Commonwealth v. Anzalone,* 269 Pa.Super. 549, 410 A.2d 838 (1979); *Commonwealth v. Kunkel,* 268 Pa.Super. 299, 408 A.2d 475 (1979); *Commonwealth v. Bable,* 254 Pa.Super. 72, 385 A.2d 530 (1978); *Commonwealth v. Troutman,* 223 Pa.Super. 509, 302 A.2d 430 (1973); 5 Am.Jur.2d, Arrest, § 50, pp. 742–743; 4 Wharton's Criminal Law and Procedure § 1614, p. 277 (R. Anderson ed.1957).

In the absence of an applicable federal statute, the law of the state where a warrantless arrest takes place determines its validity. *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Turning to the instant case, Bosch could have exercised his authority as a police officer to make a warrantless extraterritorial arrest only if explicit extraterritorial enabling legislation existed.

The Uniform Fresh Pursuit Act (Act) as adopted by Maryland governs the authority of a police officer of another state

A. Yes, I did.
Q. Do you have that with you?
A. Yes, I do.
Q. Well, tell us what you read?
A. These are also chemical test warnings. It reads as stated, *please be advised that you're now under the* [sic] *arrest* for driving under the influence of alcohol or a controlled substance pursuant to Section 3731 of the Vehicle Code. I'm requesting that you submit to a chemical test. . . .

N.T. 2/28/95 at 28 (emphasis added).

to arrest in Maryland. Maryland's version of the Act provides:

§ 595. Authority of officers of other states of the United States to arrest in Maryland

Any member of a duly organized state, county or municipal peace unit of another state of the United States who enters this State in fresh pursuit, and continues within this State in such fresh pursuit, of a person in order to arrest him on the ground that he is believed to have committed a felony in such other state, shall have the same authority to arrest and hold such person in custody, as has any member of any duly organized State, county or municipal peace unit of this State, to arrest and hold in custody a person on the ground that he is believed to have committed a felony in this State.

Md. Ann.Code art. 27, § 595 (1996).

Because Bosch crossed the Pennsylvania border and placed Appellant under arrest in Maryland for the suspected commission of a misdemeanor,[2] as opposed to a felony, the Act is inapplicable. The unambiguous use of the word "felony" in the Act precludes a contrary interpretation. The Act as adopted by Maryland does not authorize a police officer of another state to arrest a suspected misdemeanant in Maryland.

Trooper Bosch crossed the Pennsylvania border into Maryland and placed Appellant under arrest without the authority to act as a police officer in Maryland. Therefore, Bosch's acts while in Maryland must be examined as those of a private citizen. *See Stevenson v. State of Maryland,* 287 Md. 504, 413 A.2d 1340 (1980) (since officers from the District of Columbia were not in "fresh pursuit" of the defendants at the time they arrested them in Maryland, they no longer had authority to arrest as police officers; consequently, officers' acts must be examined as those of private citizens).

**2.** The offense of driving under the influence is graded as a second degree misdemeanor. 75 Pa.C.S. § 3731(e).

The issue then becomes whether Bosch could have lawfully placed Appellant under citizen's arrest and compelled intoxication testing under the Pennsylvania Implied Consent Law, 75 Pa.C.S. § 1547(a). It need not be determined whether Bosch could have effectuated a lawful citizen's arrest of Appellant in Maryland because the implied consent law does not authorize private citizens to order intoxication tests. As a private citizen, Bosch was free to gather evidence within the constraints of Maryland law; however, as only police officers are authorized to order intoxication tests under the implied consent law, Bosch had no authority to request that Appellant submit to intoxication tests.

When Bosch crossed the Pennsylvania border into Maryland and placed Appellant under arrest, he did so without the authority to act as a police officer. Consequently, the arrest of Appellant constituted an illegal act and the evidence seized as a result of such illegality should have been suppressed.

While the enforcement of Pennsylvania's drunk driving statute is of deep concern to both this Court and the citizens of the Commonwealth, under the present state of the law in Maryland, a Pennsylvania State Trooper has no authority to enter Maryland and place a suspected misdemeanant under arrest to compel intoxication testing. The Maryland legislature has not extended the authority of police officers of other states to cross state lines in order to arrest a suspected misdemeanant in Maryland.[3] Unlike the Opinion in Support

---

3. In contrast, the Act as adopted by Pennsylvania seemingly lacks the requirement that police officers of other states be in pursuit of a suspected fleeing felon in order to lawfully cross state lines and make an arrest in Pennsylvania. Pennsylvania's version of the Act provides:

§ 8922. Authority of officers of another state to arrest in this Commonwealth.

Any peace officer of another state who enters this Commonwealth in close pursuit of a person, and continues within this Commonwealth in such close pursuit, in order to arrest him, shall have the same authority to arrest and hold in custody such person on the ground that he has committed a crime in such state which is an indictable offense in this Commonwealth as peace officers of this Commonwealth have to arrest and hold in custody a person on the ground that he has committed a crime in this Commonwealth. 42 Pa.C.S. § 8922.

of Affirmance, we cannot condone the overt affront to the sovereignty of our sister state that occurred here.

The order of the Superior Court should be reversed.

FLAHERTY, C.J., and NIGRO, J., join in this opinion in support of reversal.