J-A14014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALFRED DINO PELLEGRINI, JR., | |
| Appellant | No. 1150 MDA 2014 |

Appeal from the Judgment of Sentence Entered June 17, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0000651-2013

BEFORE: BENDER, P.J.E., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 06, 2015**

Appellant, Alfred Dino Pellegrini, Jr., appeals from the judgment of sentence of ninety (90) days' to six (6) months' imprisonment, imposed after he was convicted of driving under the influence, general impairment, second offense,[1] and driving under the influence, general impairment with refusal, second offense.[2] Appellant challenges the trial court's denial of his pretrial motion to suppress and contests the enhanced sentence imposed by the court. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Pursuant to 75 Pa.C.S. § 3802(a)(1).

[2] Pursuant to 75 Pa.C.S. § 3802(a)(1).

The trial court set forth the relevant facts and procedural history in its Rule 1925(a) opinion as follows:

Officer Jason Hall of the Shiremanstown Borough Police Department was on duty on December 16, 2012, monitoring traffic in the 200 block of West Main Street in Shiremanstown, Cumberland County, Pennsylvania. At approximately 2:55 a.m., Officer Hall observed a black Mercedes Benz sedan, later determined to be driven by [Appellant], approach the intersection of South Rupp and West Main Street. The vehicle then pulled over to the side of the road, but was not parked parallel to the curb. Officer Hall decided to pull in behind the vehicle and make sure everything was okay. Officer Hall noticed that the vehicle was stopped in an unusual position in the street. One end of the vehicle was 4 feet from the curb [and] the other end was 5 feet from the curb. [Appellant's] vehicle was only 20 feet from the intersection and was in the roadway such that it constituted a safety hazard.

Officer Hall pulled in behind [Appellant's] vehicle and started to approach the driver's side. [Appellant] began to get out of the vehicle and Officer Hall instructed him to stay inside the vehicle. When Officer Hall was by the left rear quarter panel of the vehicle, he noticed [Appellant] was talking on his cell phone and he also smelled an odor of an alcoholic beverage emanating from the vehicle. Officer Hall approached [Appellant] and asked him to hang up the phone and [Appellant] complied.

Officer Hall then identified himself to [Appellant] and began talking to him. He told [Appellant] that he had stopped him because he had made a left turn without using his turn signal. [Appellant] told him that his mother had died and he was having a rough day. [Appellant] also informed Officer Hall that he was on his way to his girlfriend's house and knew he was close, but was not sure where he was going from there. Officer Hall noticed that [Appellant] had glassy and bloodshot eyes and that his speech was slurred. Officer Hall received [Appellant's] information and then asked if [Appellant] would be willing to perform some field sobriety tests. [Appellant] agreed and got out of the vehicle. After getting out of the vehicle for field sobriety tests, [Appellant] reminded Officer Hall that he was having a rough day and that his mother was on life support. Officer Hall asked [Appellant] about this because previously

- 2 -

[Appellant] said his mother had died. [Appellant] replied that he meant he had taken her off life support that day and she would die soon.

After this conversation, Officer Hall first performed the HGN test and said that "it took a while for [Appellant] to follow the instructions, mainly keeping his head still." Next, Officer Hall performed the walk and turn test and had to remind [Appellant] to get into the starting position several times. [Appellant] was frustrated with Officer Hall and accused him of making the test too tough for him. Then [Appellant] mentioned he was just on his way to a friend's house. Officer Hall responded that he understood [Appellant] was going to his girlfriend's house. [Appellant] then stated in a defiant tone that he never said he was going to his girlfriend's house. Officer Hall pointed out the inconsistencies in [Appellant's] stories and [Appellant] got quiet. Following this exchange, [Appellant] was unwilling to complete the walk and turn test.

Finally, Officer Hall performed the one-leg stand test. [Appellant] could not keep his foot up and almost fell into Officer Hall. [Appellant] was unable to complete this test either. Officer Hall then asked if [Appellant] would complete a portable breath test ("PBT") test. [Appellant] voluntarily did the PBT and the results "did confirm [Officer Hall's] observations that there was a presence of alcohol on [Appellant's] breath." This confirmed Officer Hall's opinion that [Appellant] was incapable of safe operations and was DUI. Thereafter, Officer Hall placed [Appellant] under arrest for DUI.

Officer Hall transported [Appellant] to Cumberland County Prison for booking. After arriving, Officer Hall read [Appellant] the DL-26 form, which informed [Appellant] about the consequences of refusing to submit to the blood draw, and then asked him to submit to a blood draw. [Appellant] ultimately refused to submit to the blood draw. Based on his refusal, no blood was drawn from [Appellant].

Prior to the non-jury trial, [Appellant] filed a Motion to Suppress on February 5, 2014. [Appellant] argued that the evidence of his refusal to submit to chemical testing should be suppressed because the Commonwealth did not have a warrant to conduct a "search" of [Appellant's] blood when [Appellant] was asked to consent to the blood test. The basic logic of [Appellant's] motion was that after the U.S. Supreme Court case

of **Missouri v. McNeely**, 569 U.S. \_\_\_, 133 S.Ct. 1552 (2013), implied consent laws have no validity and that a[n] [Appellant's] refusal to submit to a blood test is an exercise of a constitutionally protected right when the Commonwealth has not obtained a warrant to draw blood for a test prior to asking [Appellant] to consent. Appellant also argued that it was unconstitutional to impose a greater penalty on him for refusing the chemical test. [Appellant's] Motion to Suppress was denied on March 10, 2014, following [Appellant's] stipulation that he was read the DL-26 implied consent form and that he refused the chemical test.

A non-jury trial was held on May 7, 2014, where [the trial court] found [Appellant] guilty beyond a reasonable doubt of the above-captioned offenses. [Appellant] was found not guilty of DUI Highest Rate, as there was no evidence presented that showed [Appellant's] BAC was above .16. On June 17, 2014, [Appellant] was sentenced at Count 2, DUI, second offense, with Refusal, to a period of incarceration in Cumberland County Prison for a period of 90 days to 6 months. Count 1 merged with Count 2 for sentencing.

Trial Court Opinion (TCO), dated 9/10/14, at 2-5.

On July 11, 2014, Appellant filed a notice of appeal, followed by a timely Rule 1925(b) statement. Appellant now presents the following issues for our review:

[I.] Did the trial court err in denying Appellant's omnibus pre-trial motion without a hearing?

[II.] Did the trial court err in sentencing Appellant to enhanced penalties based on his refusal to submit to chemical test demands?

Appellant's Brief, at 6.

We review Appellant's challenge to the denial of his motion to suppress pursuant to the following standard and scope of review:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the

suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Farnan*, 55 A.3d 113, 115 (Pa. Super. 2012).

Appellant argues that the trial court erred in denying his suppression motion without first conducting a hearing, alleviating the Commonwealth of its burden to establish that the challenged evidence was not obtained in violation of Appellant's rights. Appellant's Brief, at 10-11. In support of his argument, Appellant cites *Commonwealth v. Long*, 753 A.2d 272 (Pa. Super. 2000), where the judgment of sentence was vacated and the case was remanded to the trial court for the purposes of conducting a full suppression hearing. Appellant is requesting similar relief here. The reliance on *Long* is misplaced, however, and Appellant's claim is without merit.

In *Long*, the defendant was first made aware of the existence of a videotape of a traffic stop taken from the inside of the arresting officer's police cruiser the night of the defendant's arrest, just prior to the start of the trial. *Id.* After viewing the videotape, defense counsel orally moved at trial

to suppress evidence obtained during the traffic stop.  *Id.*   Typically, "a motion to suppress must be made pretrial, unless 'the opportunity did not previously exist, or the interests of justice otherwise require.'"  *Id.* at 279 (quoting *Commonwealth v. Barnyak*, 639 A.2d 40, 45 (Pa. Super. 1994)). Given the unique circumstances, this Court concluded that, in the interest of justice, a suppression hearing was warranted and remanded the case for a hearing.  *Long*, 753 A.2d at 282.  No such extenuating circumstances exist in the case before us.

Appellant objects to the trial court's denial of his motion to suppress without first conducting a hearing, asserting that his stipulation to the implied consent and refusal of the blood test, "did not alleviate the Commonwealth of [its] burden to prove that this information could be used against him…." Appellant's Brief, at 11.   Appellant's assertions are perplexing, as the Commonwealth filed an answer and new matter in response to the suppression motion, and a suppression hearing was held on March 10, 2014.[3]   TCO, at 8.  After meeting with counsel in chambers, Appellant stipulated at the hearing that implied consent was given in accordance with Pennsylvania law and that he refused to submit to a blood test.  *Id.* at 8-9.  Accordingly, the trial court entered an order denying the motion to suppress.  Appellant made no objections to the entry of the order

---

[3] The trial court allocated 2½ hours for the purposes of Appellant's suppression hearing.  *Id.*

during the suppression hearing, nor did he request a full hearing at the time. *Id.* "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Therefore, we are constrained to conclude that Appellant's claim regarding the denial of his motion to suppress has been waived. Nevertheless, were we to reach Appellant's claim, it is without merit.

Appellant alleges that the request for a blood test violated his Fourth Amendment rights and, therefore, should have been suppressed. Appellant's Brief, at 13-15. In support of his argument and as noted by the trial court, Appellant cites *McNeely*, where the Supreme Court held "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 133 S.Ct. at 1568. Appellant mistakenly concludes that, based on *McNeely*, evidence of his refusal should be suppressed because the officer did not obtain a warrant prior to requesting Appellant's consent to a blood test. *McNeely* is not applicable here, as Appellant was never subjected to a blood test, unlike in *McNeely*, where the defendant was forced to submit to a blood test despite his refusal. We agree with the trial court that it is clear there was no unreasonable search and seizure here, as no evidence was seized, and that it is unreasonable for Appellant to suggest that police must have a warrant to simply ask for consent to draw blood. TCO, at 7.

The Supreme Court recognized in *McNeely* that:

- 7 -

[A]ll 50 states have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense…. Such laws impose significant consequences when a motorist withdraws consent … and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution.

*Id.* at 1566. Moreover, Pennsylvania has recognized that there is no constitutional right to refusal of a blood test. *Commonwealth v. Beshore*, 916 A.2d 1128, 1141-42 (Pa. Super. 2007) (citing *Commonwealth v. Graham*, 703 A.2d 510 (Pa. Super. 1997)). *See also Commonwealth v. Stair*, 699 A.2d 1250 (1997). Appellant's claim that the mere request for his consent to a blood test violated his constitutional rights is wholly without merit.

Next, we address Appellant's challenge to the sentence imposed, applying the following standard of review:

A claim that the court improperly graded an offense for sentencing purposes implicates the legality of a sentence. A challenge to the legality of a sentence may be raised as a matter of right, is not subject to waiver, and may be entertained as long as the reviewing court has jurisdiction…. When we address the legality of a sentence, our standard of review is plenary and is limited to determining whether the trial court erred as a matter of law.

*Commonwealth v. Bowers*, 25 A.3d 349, 352 (Pa. Super. 2011) (citations omitted).

Appellant avers that the trial court erred by taking into consideration his refusal of the blood test at the time of sentencing. Appellant's Brief, at 13. We disagree. Section 1547(e) of the Vehicle Code provides that, "[i]n

any … criminal proceeding in which the defendant is charged with a violation of section 3802 … the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal." 75 Pa.C.S. § 1547(e). Additionally, section 1547(b)(2)(ii) expressly states, "if [a] person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) …." 75 Pa.C.S. § 1547(b)(2)(ii). Thus, the trial court did not err by taking into consideration Appellant's refusal of the blood test at the time of sentencing. Having already determined that Appellant's constitutional rights have not been violated, it is noted that Appellant stipulated on the record to his refusal of the blood test. We conclude that Appellant was properly sentenced in compliance with section 3804(c).[4]

_____

[4] Section 3804(c) provides as follows:

> **(c) Incapacity; highest blood alcohol; controlled substances.**—An individual who violates section 3802(a)(1) and refused testing of blood or breath … shall be sentenced as follows:
>
> …
>
> (2) For a second offense, to:
>
> (i) undergo imprisonment of not less than 90 days;
>
> (ii) pay a fine of not less than $1,500;

75 Pa.C.S. § 3804(c).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2015