J-A04002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
TIMOTHY KARL SENSENEY :
:
Appellant : No. 923 MDA 2024

Appeal from the Judgment of Sentence Entered May 28, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0001241-2023

BEFORE: LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: MAY 21, 2025**

Timothy Karl Senseney appeals from the judgment of sentence, entered in the Court of Common Pleas of Adams County, following his convictions of one count each of fleeing or attempting to elude police officer[1] (fleeing and eluding) and prohibited sun screening.[2] After review, we affirm.

The trial court cogently summarized the factual and procedural history of this case as follows:

On October 10, 2023, at approximately 9:23 p.m., Officer Christopher Roosen was on duty in full uniform as a police officer for Liberty Township. [Officer Roosen] was stopped at a stop sign at the intersection of Jacks Mountain Road at Route 16 Waynesboro Pike, just over the border of Hamiltonban Township. While stopped just outside of his primary jurisdiction, [Liberty

---

[1] 75 Pa.C.S.A. § 3733(a).

[2] *Id.* at § 4524(e)(1).

Township,] Officer Roosen observed a black Tesla with darkly tinted windows traveling westbound on Waynesboro Pike out of Liberty Township.  Officer Roosen observed the Tesla continue out of Liberty Township, past his position, and into Hamiltonban Township, headed westbound on Route 16.  It was later determined that the operator of the black Tesla [] was [Senseney].

Officer Roosen pulled out behind the vehicle in an unmarked white police SUV to attempt to effectuate a traffic stop, at which time Officer Roosen activated his emergency lights.  [Senseney] put on his hazard lights and slowed down but did not come to a stop.  Officer Roosen testified that he had conducted traffic stops in this area before and understood that [Senseney] may have been waiting for a safe place to pull over[,] as there was virtually no shoulder on this portion of Route 16.  Officer Roosen continued to follow [Senseney] with his emergency lights activated for about a mile, past the point where [Senseney] could have pulled into the Fountaindale Fire Department [parking lot].  The vehicle continued to Iron Springs Road, turned onto Thunder Trail southbound and then made a right turn through a residential area until it came to a stop sign at Scotch Trail.  Seeing [Senseney] was stopped at the stop sign, Officer Roosen seized the opportunity to pull his police vehicle in front of [Senseney]'s Tesla at an angle to cut off the intersection, with lights and sirens still activated.  Officer Roosen immediately exited his vehicle and approached [Senseney]'s vehicle while verbally commanding [Senseney] to stop his vehicle.  [Senseney] yelled something indistinguishable to Officer Roosen, then rapidly accelerated around the stopped police car and turned left down Scotch Trail.  [Senseney] continued to evade Officer Roosen, who had returned to his vehicle to continue the pursuit, through the residential area up to a private driveway[,] where [Senseney] finally came to a stop next to one of the homes sharing that driveway.  Officer Roosen testified that the entire low-speed chase lasted roughly three miles.

[Officer] Roosen, upon making contact with [Senseney], observed that he had bloodshot eyes and smelled of [an] alcoholic beverage.  Trooper Roosen then conducted a DUI investigation on [Senseney].  [Officer] Roosen read [Senseney] the DL-26 form

- 2 -

and transported [him] to Gettysburg Hospital for a blood draw.[3] At some point during the course of their interaction, [Senseney] told Officer Roosen that he [had not stopped because he] had encountered someone "impersonating a police officer" in Washington, D.C., some time ago.

[Senseney] filed [a n]otice of affirmative defense on May 20, 2024, asserting that [Senseney] would prove by a preponderance of the evidence that his failure to stop immediately after Officer Roosen activated his lights, and thereafter, sirens, as [Senseney] had a good faith concern for his personal safety, as contemplated in 75 Pa.C.S.[A.] § 3733(c)(2).[4]

After [a] hearing on May 28, 2024, the [trial c]ourt found [Senseney] guilty as to both charges and entered a judgment imposing a fine of $500[.00] on [the fleeing and eluding count] and a $25[.00] fine on [the prohibited sun screening count], plus fees and costs. On June 7, 2024, [Senseney] filed [a timely n]otice of appeal and [a court-ordered Pa.R.A.P. 1925(b) c]oncise statement of matters complained of on appeal[.].

Trial Court Opinion, 8/2/24, at 1-3 (citations, footnotes, and unnecessary capitalization omitted).

Senseney now raises the following claims for our review:

1. Whether the trial court erred in denying [Senseney]'s motion for dismissal of charges for lack of jurisdiction at the time of his arrest?

2. Whether the trial court erred in denying [Senseney]'s motion for suppression of evidence for a vehicle stop based solely on an alleged window tinting violation?

_____

[3] Senseney's blood draw results revealed that he was not intoxicated or under the influence of drugs. Consequently, he was not charged with driving under the influence.

[4] Subection (c)(2) provides that it is an affirmative defense to the crime of fleeing and eluding if the defendant "can show by a preponderance of the evidence that the failure to stop immediately for a police officer's vehicle was based upon a good faith concern for personal safety." *Id.*

3. Whether the trial [judge] erred in not recusing himself [from] presiding judge at [Senseney]'s bench trial, inasmuch as it was never divulged to undersigned counsel that the attorney for the Commonwealth had recently worked as a law clerk for the trial [judge?]

4. Whether the trial court erred in refusing to admit or consider [Senseney]'s exhibits, specifically the videotape from the Tesla on the night of the incident and a document relating to a York County municipal government's termination of the officer's previous employment, inasmuch as both were relevant and admissible to impeach the officer's credibility?

5. Whether the trial court erred in finding [Senseney] guilty, inasmuch as the Commonwealth failed to prove beyond a reasonable doubt that [Senseney] had some motive for his failure to pull over to the side of the road other than a concern for his personal safety?

Brief for Appellant, at 4.

In his first claim, Senseney argues that the trial court erred in denying his motion to dismiss for lack of jurisdiction. *See id.* at 15-17. In particular, Senseney asserts that Officer Roosen was in Hamiltonban Township, not Liberty Township, and that, consequently, Officer Roosen did not have jurisdiction to stop or arrest Senseney. *See id.* Senseney points out that Liberty and Hamiltonban Townships do not have a municipal aid agreement. *See id.* Senseney posits that, under the Municipal Police Jurisdiction Act

(MPJA),[5] Officer Roosen could not have lawfully arrested him where the pursuit did not begin in Liberty Township.[6]  *See id.* at 16-17.  We disagree.

Although titled as a motion to dismiss, courts of this Commonwealth treat jurisdictional challenges under the MPJA as motions to suppress, on review of which we are bound by the suppression court's factual findings so long as they are supported by the record and the legal conclusions drawn therefrom are correct; our standard of review on questions of law is *de novo*. *See Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017); *see Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa. Super. 2006).  We consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by the defense that is not contradicted when examined by the facts supported by the record. *See id.*  As such, we may reverse only if the legal conclusions reached by the court were erroneous.  *See id.*; *see also Yandamuri*, *supra*.

The MPJA, in relevant part, provides:

> **§ 8953. Statewide municipal police jurisdiction.**

---

[5] 42 Pa.C.S.A. § 8953.

[6] We note that Senseney relies upon *Commonwealth v. Fiume*, 436 A.2d 1001 (Pa. Super. 1981), for the proposition that an officer must begin the pursuit of a defendant in the officer's primary jurisdiction.  *See* Brief for Appellant, at 17.  However, *Fiume* interpreted the prior version of the MJPA, 19 P.S. § 11, which is not at issue here.  *See Fiume*, 436 A.2d at 1003 n.3 (explaining 19 P.S. § 11 was repealed by 1978 P.L. 202, No. 53, and made effective June 27, 1978).  Consequently, *Fiume* is inapplicable to this case.

**(a) General rule.--**Any duly employed municipal officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction[,] shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

* * *

(2) Where the officer is in hot pursuit of any person for any offense which was committed[,] or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S.A. § 8953(a)(2). The courts of this Commonwealth have consistently held that in applying the MPJA in a manner that effectuates its purpose, we should construe its provisions liberally.

Th[e MPJA] is not among those statutes which must be strictly construed under the rules of statutory construction, but instead is subject to liberal construction to effectuate its objectives and to promote justice. Specifically, one of the principal objectives to be obtained by th[e MPJA] is to promote public safety while maintaining jurisdictional police lines. However, as our Supreme Court stated in [**Commonwealth v. Merchant**, 595 A.2d 1135 (Pa. 1991),] the General Assembly recognized that constructing impenetrable jurisdictional walls benefited only the criminals hidden in their shadows.

**Commonwealth v. Eisenfelder**, 664 A.2d 151, 153 (Pa. Super. 1995) (some citations and quotations omitted).

This Court has explained that there are two requirements for an arrest to be valid under the hot pursuit exception of the MPJA. First, the police officer must have probable cause to believe that the defendant committed a crime in his primary jurisdiction. **See Commonwealth v. Peters**, 965 A.2d 222, 223

- 6 -

n.2 (Pa. 2009). Second, there must be "some sort of investigation and tracking of the perpetrator and that pursuit must be immediate, continuous[,] and uninterrupted." *Id.* at 225. Further, "[h]ot pursuit simply requires a chase. . . . [B]y its terms [it] does not require police observation of the criminal activity[,] nor does it negate pursuits based on witness information as to the location of the suspect." *Commonwealth v. McPeak*, 708 A.2d 1263, 1266 (Pa. Super. 1998).

Instantly, as the trial court aptly noted, this slow-paced "hot pursuit" began and ended in Hamiltonban Township. *See* Trial Court Opinion, 8/2/24, at 1-2, 9. However, Officer Roosen testified that he first observed the window tint violation while stopped at a stop sign at the intersection of Jacks Mountain Road and Route 16. *See id.* at 1-2; *see also* N.T. Non-Jury Trial, 5/28/24, at 3-8. Officer Roosen explained that this intersection is on the border of Liberty Township and Hamiltonban Township. *See* N.T. Non-Jury Trial, 5/28/24, at 3-6. Officer Roosen observed the Tesla with an illegal window tint exiting Liberty Township and entering into Hamiltonban Township. *See id.* at 6-8. Officer Roosen immediately activated his police vehicle's lights, and began a continuous, uninterrupted "chase." *See* Trial Court Opinion, 8/2/24, at 1-3.

Based upon Officer Roosen's testimony regarding the initiation of the "hot pursuit," it is clear that Officer Roosen had the authority under the MPJA to stop the Tesla even in Hamiltonban Township. Although Senseney is correct that there is no municipal aid agreement between Liberty and Hamiltonban

Townships, Officer Roosen saw the window tint violation while the Tesla was **in Liberty Township**. *See id.* Furthermore, based upon the testimony and evidence presented at trial, it is clear that the window tint violation did not occur only in Hamiltonban Township, but in both townships. *See id.* Thus, Officer Roosen, who was located in Hamiltonban Township but along the border of the two Townships, observed a traffic violation occur in his primary jurisdiction, Liberty Township, and, therefore, had jurisdiction to conduct a lawful traffic stop in Hamiltonban Township under the MJPA. *See id.*; *see also* 42 Pa.C.S.A. § 8953(a)(2); *Peters*, *supra*. Lastly, we conclude that Officer Roosen was in a "hot and fresh pursuit" as required by the MJPA and, accordingly, Senseney is entitled to no relief on this claim. *See Peters*, *supra*.

In his second claim, Senseney argues that the trial court erred in denying his motion to suppress the stop where Officer Roosen did not have the requisite probable cause. *See* Brief for Appellant, at 17-19. We disagree.

It is uncontradicted that Officer Roosen stopped Senseney's vehicle for a window-tint violation under 75 Pa.C.S.A. § 4524(e)(1), which provides, in relevant part, as follows:

> **(e) Sun screening and other materials prohibited.--**
>
> (1) No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing[,] or side window of the vehicle.

75 Pa.C.S.A. § 4524(e)(1).

In order to conduct a vehicle stop based upon a possible window-tint violation of the Vehicle Code, the officer must possess probable cause. *See Commonwealth v. Prizzia*, 260 A.3d 263, at 268-69 (Pa. Super. 2021). "[T]o possess probable cause that a vehicle is in violation of section 4524(e)(1), an officer **must only observe that the tint on the vehicle's windows is so dark that it prohibits the officer from seeing inside the car**." *Id.* at 269 (citing *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017)) (emphasis added).

Instantly, the trial court addressed Senseney's claim as follows:

"Probable cause exists where the facts and circumstances within the knowledge of the officer are based on reasonably trustworthy information and are sufficient to warrant a man of reasonable caution in the belief that the suspect 'has committed or is committing a crime.'" *Commonwealth v. Joseph*, 34 A.3d 855, 863 (Pa. Super. 2011). When a non-investigable vehicle offense has occurred, an officer must "articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the [Vehicle] Code." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010). Probable cause is evaluated based on the totality of the circumstances. [*See*] *id.* "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." [] *Harris*, 176 A.3d [at] 1019[.]

In this instance, [Officer] Roosen had probable cause to stop [Senseney] for violating the Vehicle Code. At the hearing on May 28, 2024[,] Officer Roosen testified that he witnessed a vehicle, the driver of which was later identified as [Senseney], drive past him with sunscreening or tint so dark that he was unable to see the interior of the vehicle. That testimony is sufficient to provide [O]fficer [Roosen] with the probable cause necessary to execute a traffic stop under Pennsylvania precedent.

Trial Court Opinion, 8/2/24, at 6-7 (footnotes and some citations omitted).

Upon review, we agree with the sound determinations of the trial court. Indeed, Officer Roosen needed nothing more to effectuate a lawful traffic stop than his observation that Senseney's vehicle was violating the prohibition against sun screening. **See Prizzia**, **supra**. Therefore, Senseney is entitled to no relief on this claim.

In his third claim, Senseney argues that the trial judge erred by failing to recuse himself from his case where the ADA was his former law clerk, Grace Koppenheffer, Esquire (ADA Koppenheffer). **See** Brief for Appellant, at 19-21. We disagree.

Prior to addressing the merits of this claim, we must determine whether Senseney has preserved this claim for our review.

> [T]he law is clear . . . a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived.

**Lomas v. Kravitz**, 170 A.3d 380, 390 (Pa. 2017) (citations omitted); **see also Goodheart v. Casey**, 565 A.2d 757, 763-64 (Pa. 1989) (failure to file motion for recusal where facts were known or should have been known results in waiver).

Instantly, we observe that Senseney did not file a motion in the trial court requesting recusal and now raises this issue for the first time on appeal. Senseney argues that he was unaware of the professional relationship between the trial judge and ADA Koppenheffer until after his notice of appeal

- 10 -

was filed. *See* Brief for Appellant, at 17-19. However, in its opinion, the trial court noted that ADA Koppenheffer served as his law clerk for 18 months and took the ADA position on May 17, 2024. *See* Trial Court Opinion, 8/2/24, at 10. The trial court further explained that no pre-trial motions or hearings in this case occurred while the ADA was still serving as his law clerk. *See id.* Moreover, the trial court concluded that Senseney's claim is waived because when Attorney Koppenheffer served as the trial judge's clerk, Attorney Koppenheffer was in the courtroom every day, and defense counsel was present for numerous hearings and bench trials during the same 18 months. *See id.* The trial court, thus, determined that defense counsel should have been aware of Attorney Koppenheffer's prior employment well before the filing of the Rule 1925(b) concise statement in this case and, therefore, the claim is waived. *See id.*

Upon review, we agree with the trial court's conclusions and determine that Senseney's recusal claim is waived. Furthermore, even if he had preserved his claim, Senseney is entitled to no relief because he fails to demonstrate that the trial judge was biased, prejudiced, or unfair. *See Arnold v. Arnold*, 847 A.2d 674, 680 (Pa. Super. 2004) (requiring party who requests recusal must "produce evidence establishing bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially"). Senseney provides no evidence and makes no argument that the trial judge was biased or prejudiced against him in any way. Furthermore, a mere professional relationship, absent any indicia of bias or prejudice, will

not form an adequate basis for recusal. *See Commonwealth v. Dip*, 221 A.3d 201, 206 (Pa. Super. 2019) ("[T]he mere presence of an interest or relationship that could theoretically affect a judicial decision does not create a presumption of partiality[.]") Accordingly, Senseney's claim is meritless.

In his fourth claim, Senseney argues that the trial court abused its discretion by refusing to admit his defense exhibits at trial. *See* Brief for Appellant, at 21-23. Senseney contends that he had a thumb drive containing video footage from the Tesla, which would have demonstrated that there were no safe locations to pull over. *See id.* Additionally, Senseney posits that the trial court should have admitted a York City letter discharging Officer Roosen from his employment with that jurisdiction. *See id.* We disagree.

We observe that Senseney's brief on this issue is deficient and does not comply with our appellate rules and, consequently, the claim is waived. Senseney does not cite to any case law or to the relevant portions of the record that would support his claim. *See* Pa.R.A.P. 2119(e) ("[w]here under applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth . . . either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c)"); *id.* at 2119(a) (providing appellant's arguments shall include "such discussion and citation of authorities as are deemed pertinent"); *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to . . . develop the issue in any [] meaningful fashion capable of review, that claim is waived");

***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (explaining appellant must "present arguments that are sufficiently developed for our review. . . . This Court will not act as counsel and will not develop arguments on behalf of an appellant."). Accordingly, this claim is waived for our review.

Nevertheless, even if Senseney had not waived this claim, we would conclude that it is meritless for the reasons set forth in the trial court opinion, which states as follows:

> "It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." ***Commonwealth v. Hoover***, [] 107 A.3d 723, 729 ([Pa.] 2014). "When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden [on the appellant] to shown that this discretion has been abused." ***Commonwealth v. Gill***, [] 206 A.3d 459, 533 ([Pa.] 2019)[.] "An appellate court may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court." ***Id.*** Rule 403 of the Pennsylvania Rules of Evidence states:
>
> > [T]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
>
> Pa.R.E. 403.
>
> The [trial c]ourt determined that both the thumb drive containing the video from [Senseney's] Tesla and the York City letter of discharge from York City Police were not admissible as evaluated under the Rule 403 balancing test.
>
> The thumb drive [Senseney] moved to admit at the hearing purportedly contained a video recorded form [Senseney]'s Tesla's built-in camera system. However, the video had been edited and the thumb drive contained [several] other items, including

graphics, maps, and other documents. Additionally, [Senseney did not provide the evidence to the Commonwealth prior to the date of the trial and] the Commonwealth did not have [the opportunity] to look at the video, or any of the contents of the thumb drive . . . before [Senseney] moved for its admission[.] Aside from these procedural issues, it is unclear what the video would contribute to the [c]ourt's analysis of the issues presented in this matter. When playing the video is open court, [Senseney] generally testified about the location of Officer Roosen's vehicle and his impression of the [] police vehicle as he passed it. What little light the edited video and accompanying maps and graphics could shed on the situation would not have been prudent use of the [c]ourt's time and would have, at best, been duplicative evidence. There were additional procedural issues with the thumb drive . . . [as] there would have been issues with authenticating all of the documents the thumb drive contained. After conversation [with counsel] in chambers, the [c]ourt appropriately determined that the thumb drive was not admissible.

Additionally, the York City Resolution of Discharge from York City Police was also excluded as generally irrelevant. The letter [itself] was not authenticated. The nature of Officer Roosen's departure from the Liberty Township Police was more than sufficiently parsed on the record, as noted by defense counsel at the hearing. The reasons for Officer Roosen's discharge were brought out by both the Commonwealth and [Defense] Counsel through [the] testimony of Officer Roosen as a witness. . . . From the testimony[,] it was apparent that Officer Roosen's discharge had nothing to do with the events of this case. The letter restating those reasons for discharge would be irrelevant and, to the limited extent such substantive information could be useful, would be duplicative of the testimony regarding the same matters already heard at the hearing. As such, the York City Resolution of Discharge from York City Police was properly excluded using the Rule 403 balancing test, as the letter would have been irrelevant generally, or if not entirely unhelpful, duplicative evidence.

Trial Court Opinion, 8/2/24, at 11-13 (emphasis, unnecessary capitalization, and some citations omitted).

- 14 -

Based upon our review of the record, we agree with the trial court's reasoning and determination and find no merit to Senseney's claim. Furthermore, the trial court had the opportunity to review the video and documents Senseney wished to admit and concluded that it was duplicative of existing evidence. *See* Trial Court Opinion, 8/2/24, at 12-13. Consequently, we discern no abuse of discretion and Senseney is entitled to no relief.

In his fifth issue, Senseney argues that the trial court erred in convicting him of fleeing and eluding because the Commonwealth failed to disprove his affirmative defense—that he had a good faith concern for his personal safety— beyond a reasonable doubt. *See* Brief for Appellant, at 23-31. Senseney contends that he was previously robbed by someone impersonating a police officer. *See id.* at 25-26. Senseney posits that, against the backdrop of his personal experience, he was acting out of a good faith concern for his personal safety by traveling to his house before stopping. *See id.* at 25-28. Senseney asserts that he drove past the Fountaindale Fire Department because even though the Fountaindale Fire Department was lit, it was an unpopulated area at that time. *See id.* at 26-27. Senseney points out support for his argument is evidenced by the facts that he slowed his vehicle and activated his four-way flashers. *See id.* at 23-31. We disagree.

Senseney's claim challenges the sufficiency of the evidence, for which we adhere to the following standard of review:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and scope of review is plenary. In reviewing the sufficiency of the evidence,

we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citations and internal quotations omitted).

The offense of fleeing and eluding police is defined by statute as follows: "Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense." 75 Pa.C.S.A. § 3733(a). Senseney defense is supported by section 3733(c)(2) of the Vehicle Code, which provides as follows:

**(c) Defenses.--**

\* \* \*

(2) It is a defense to prosecution under this section if the defendant can show by a preponderance of the evidence that the failure to stop immediately for a police officer's vehicle was based upon a good faith concern for personal safety. In determining whether the defendant has met this burden, the court may consider the following factors:

(i) The time and location of the event.

(ii) The type of police vehicle used by the police officer.

(iii) The defendant's conduct while being followed by the police officer.

(iv) Whether the defendant stopped at the first available reasonably lighted or populated area.

(v) Any other factor considered relevant by the court.

75 Pa.C.S.A. § 3733(c)(2).

A defendant establishes statutory defense under subsection 3733(c)(2) by producing evidence of his or her subjective concern for his or her safety. *See Commonwealth v. Weber*, 189 A.3d 1016, 1026 (Pa. Super. 2018). The factors set forth in subsection 3733(c)(2)(i)-(iv) only come into play when the evidence demonstrates a defendant's subjective concern for his safety. *See id.* In other words, if the defendant presents evidence of a subjective fear for his or her safety, the good faith factors are intended to be the framework in which the fact-finder evaluates whether the defendant's subjective fear is held in good faith. *See Commonwealth v. Ryan*, 283 A.3d 390 (Pa. Super. 2022) (Table)[7] (citing 75 Pa.C.S.A. § 3733(c)(2)).

Instantly, the trial court addressed Senseney's affirmative defense claim as follows:

> [Senseney] testified that several years ago [] in Washington, D.C., he had an encounter with a person [Senseney] said was impersonating what looked to [him] to be a security guard and "definitely not a D.C. police officer." During the interaction the perpetrator approached his vehicle with a weapon drawn. The car that the perpetrator used had no police lights or anything on his

---

[7] Pa.R.A.P. 126(b) (non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value).

vehicle. It was clearly a carjacking and not someone impersonating a police officer. [Senseney] also noted that it was this concern about encountering someone impersonating a "police officer" that led to his decision to not pull over once signaled to do so, specifically because of the darkness of the road and his lack of cellphone service in the area in case he needed to call for help. [Senseney] testified to his subjective concern for his safety, but [the trial c]ourt did not find that [Senseney] established this concern was held in good faith when analyzed using the factors enumerated in [section] 3733(c)(2) and considering the facts of the Washington, D.C., incident.

To the first factor the [c]ourt must consider, the time and location of the event, Officer Roosen attempted to initiate a traffic stop in the evening, around 9:23 p.m. on October 10, 2023. It would have been dark at that time in October, and the road on which [Senseney] was driving on is known to be a poorly-lit road. However, [Senseney]'s home was only a few miles away and he was no doubt very familiar with the area.

The second consideration is the type of police vehicle used. Here, [Officer] Roosen was driving an unmarked police vehicle[;] however[,] it was equipped with lights and sirens, unlike the vehicle [Senseney] encountered in Washington, D.C. [Officer] Roosen was also in full uniform identifying him as a police officer in Liberty Township, which [Senseney] certainly saw when [Officer] Roosen exited [his vehicle and] approach[ed Senseney] when stopped at a stop sign. [Senseney]'s reaction to seeing a uniformed police officer approach his vehicle was to speed around the police vehicle and away to continue the chase.

The third factor, [Senseney]'s behavior while being followed by the police, indicates a desire to avoid the police rather than a good faith fear for [Senseney]'s own safety. When [Officer] Roosen approached [Senseney]'s vehicle and first activated his emergency lights to signal [Senseney] to pull over, [Senseney] slowed down and turned on his hazard lights. Despite there being no traffic on the road, [Senseney] made no attempt to pull over and instead proceeded to continue through a series of turns and into a residential area. When he approached a stop sign at an intersection, [Senseney] initially stopped, but when [Officer] Roosen pulled his police vehicle diagonally in front of [Senseney]'s vehicle and approached the vehicle on foot, [Senseney]'s reaction was to swerve around the police vehicle and [Officer] Roosen,

then to speed off down Scotch Trail and continue the chase. [Senseney] never yielded for lights or sirens until he was in the driveway of his residence several miles from where [Officer] Roosen first signaled [Senseney] to pull over. While [Senseney] did not engage in a high[-]speed chase, his behavior while driving was more characteristic of someone trying to avoid or evade the police than of someone attempting to comply with police signals as safely as possible.

Lastly, [Senseney] did not pull over at the first reasonably lighted or populated location. [Senseney], who lived in the area of the encounter, did not pull over at the Fountaindale Fire Department, which was a well-[lit] parking lot that offered the first safe place to stop a vehicle given the lack of a shoulder on Old Waynesboro Road. [Senseney] did not pull over or stop after several turns, while in a residential area, or even when [Officer] Roosen physically cut off the intersection with his police vehicle and approached [Senseney] on foot. Indeed, [Senseney] only stopped [his] vehicle when he was in the driveway of his residence. It is also noteworthy that [Senseney] recalled the advice previously given by police to drive to the nearest police station in the event that he suspects he is being followed by a carjacker or [] someone posing as a police officer. [Senseney], instead, drove to his residence.

Based on the sum of the factors above, [Senseney] falls short of showing, by a preponderance of the evidence, that his fear for his safety was held in good faith. While Old Waynesboro Road may be dimly lit and offer few suitable places to safely conduct a traffic stop, [Senseney]'s continued conduct in this instance speaks for itself. [Senseney] led [Officer Roosen] on a miles-long pursuit, however slowly, did not make an attempt to pull over at the first well-[lit] location, and went so far as to swerve around a police vehicle to avoid pulling over. [Senseney]'s experience with a carjacker in Washington, D.C., several years ago is certainly a consideration, but in this case, [Senseney] saw a fully uniformed police officer approach his vehicle, observed the lights and sirens on the unmarked police vehicle, and opted not to drive to a local police station or other safe location before stopping, but rather drove home.

Trial Court Opinion, 8/2/24, at 15-17.

Our review of the record confirms the trial court's findings and conclusions. As the trial court summarized, there was nothing in the record to demonstrate that Senseney had a good faith concern for his personal safety. **See id.** Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude that the evidence was sufficient to support Senseney's conviction of fleeing and eluding. Officer Roosen activated his lights and sirens to effectuate a lawful traffic stop after observing Senseney's illegal sun screened windows. Senseney failed to pull over at any of the well-lit or populated areas and, instead, drove home. Thus, the evidence established that Senseney fled or attempted to elude Officer Roosen. Moreover, Senseney's prior experience in Washington, D.C., with a carjacker who had impersonated a police officer is readily distinguishable from the facts of this case where the police vehicle, though unmarked, had activated lights and sirens and Officer Roosen was a fully uniformed police officer, which Senseney was able to observe when Officer Roosen approached his vehicle on foot. **See** Trial Court Opinion, 8/2/24, at 15-17. The trial court appropriately considered and weighed the factors set forth in section 3733(c)(2)(i)-(iv) and, after review, we agree with the trial court's thorough analysis and conclusion. Accordingly, Senseney is entitled to no relief, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/21/2025